TOOKER, Appellant, v. DUCKWORTH, Respondent.

**St. Louis Court of Appeals, May 10, 1904.**

1. **REAL ESTATE AGENT: License: Commission.** Where a city ordinance required all real estate agents to take out licenses and provided a penalty for failure to do so, an unlicensed agent may nevertheless enforce a contract for a commission with one whose property he has sold, it not being shown that the agent and the principal agreed that the ordinance should be violated.

2. ———: **Commission.** Where a real estate agent, having contracted, for a certain commission, to sell a given piece of property, brought a purchaser to the owner, and the purchaser refused to take the property as offered, but finally concluded an agreement with the owner to buy the property together with another lot adjoining (which the owner purchased for the purpose of selling to him), at a lump price for the whole property, the agent was not entitled to a commission, because the trade as made varied, both in price and in the thing sold, from the trade which the agent contracted to make.

Appeal from Lawrence Circuit Court.—*Hon. H. C. Pepper*, Judge.

AFFIRMED.

*H. H. Bloss* for appellant.

(1) A contract made by a real estate broker, with a vendor of the real estate for the sale of property, which has been executed and the vendor of the real estate received the benefit of the broker's service, is enforcible on the part of the broker, notwithstanding his failure to comply with a city ordinance requiring him to have a license to act as a broker, and imposing a penalty for his failure to do so. This was a matter between the city and the broker and did not constitute a defense or any part of a defense. Prince v. Baptist Church, 20 Mo. App. 332; Presto v. Lewis,

11 Mo. App. 600; Smythe v. Henson, 61 Mo. App. 286. (2) The distinction between the statutes that forbid the making of the contract itself, and those that were designed purely as revenue statutes, as in this case is discussed and a distinction recognized in Ehrhardt v. Robertson Bros., 78 Mo. App. 409. (3) Varying the terms of the deal, where it was consummated to the party with whom the agent started negotiations is no defense, even where the purchaser said the original terms were too high and he would not buy. Crone v. Trust Co., 85 Mo. App. 601; Grether v. McCormick, 79 Mo. App. 329; Henderson v. Jones & Mace, 64 Mo. App. 393.

*Edw. J. White* for respondent.

The contract the plaintiff sues on, is one made in direct violation of law; is absolutely void and could afford him no legal right, or any standing in any court of justice. Downing v. Ringer, 7 Mo. 586; Cribben v. Haycraft, 26 Mo. 396; Parsons v. Randolph, 21 Mo. App. 353; Chapman v. Currie, 51 Mo. App. 40; Summers v. Summers, 54 Mo. 340; Green v. Corrigan, 87 Mo. 359; Sprague v. Rooney, 104 Mo. 349; Attaway v. Bank, 93 Mo. 485; McDermott v. Sedgwick, 140 Mo. 172; Fair Ass'n v. Carmody, 151 Mo. 566; Ullman v. Fair Ass'n, 167 Mo. 273.

BLAND, P. J.—This suit was brought in a justice's court on the following account:

"Aurora, Missouri, Aug. 25, 1903.
"Mr. J. C. Duckworth in account with
"L. A. Tooker, Dr.

"To services performed in selling a stock of goods and a building as per agreement, in 1900 ........................................................$100.00
"Interest since 1900 at six per cent, being three years ....................................... 18.00

Total .................................................$118.00"

The cause was taken by appeal to the circuit court where, on a trial de novo to the court sitting as a jury, the issues were found for the defendant. Plaintiff appealed.

Plaintiff's evidence shows that defendant owned a lot, in the city of Aurora, Missouri, with a building on it containing a stock of hardware which he wanted to sell. In the year 1899 or 1900, the defendant agreed to pay plaintiff the sum of $100 if he would find him a buyer for $2,200. Plaintiff testified he found a purchaser in L. N. Coleman who bought the property at the price defendant authorized plaintiff to sell it for. The evidence of defendant and Coleman is that Coleman would not buy the property as it stood, but agreed that he would trade if plaintiff would buy and put into the trade an adjoining lot known as the Butts lot. In order to effectuate the trade, plaintiff bought the Butts lot and then sold the whole as one property to Coleman. The evidence shows that plaintiff resided in the city of Aurora, a city of the fourth class, and that he had had some previous transactions as a real estate agent. Prior to the making of the contract between plaintiff and defendant, the city had and still has in force the following ordinance:

"SECTION 277. *Licenses, How Regulated.*—All the various objects, subjects, trades, avocations and occupations herein mentioned within the city of Aurora, shall be licensed, taxed and regulated as hereinafter provided.

"SEC. 277. *Licenses, Who Shall Have.*—It shall be unlawful for any person, company, association, firm or corporation to exercise, carry on or engage in any of the following occupations, trades, professions, business or agencies in the city of Aurora without obtaining a license therefor from said city and the charges for such licenses shall be respectively as follows, towit: (then follows the enumeration of the occupations and among the occupations the following:)

"Real Estate Agents: Twenty-five dollars for one year. The term real estate agents shall include every person, corporation, firm or partnership who shall act as agent for any person or persons or corporation for the sale or exchange of or the selling or exchanging of real estate, or who shall advertise or hang out any sign advertising any real estate for sale as such agent, excepting only the clerks of real estate agents complying with the provisions of this section.

"SEC. 285. *Penalty for Carrying on Business Without a License.*—Any person who shall carry on or engage or offer or attempt to carry on or engage in any trade, business or profession, agency, occupation, vocation or calling herein required to be licensed without first having paid for or obtained such license so required as herein provided or any person having obtained such license who shall exercise or carry on any trade, business, profession, agency, occupation, vocation or calling in any manner different to that herein provided or shall violate any of the provisions of this chapter, shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than one nor more than one hundred dollars."

The plaintiff has never complied with this ordinance by procuring a license from the city authorizing him to carry on the business of a real estate agent.

1. The plaintiff asked and the court refused the following declaration of law:

"The court declares the law to be that it would not be warranted in finding the issues in this case for the defendant because it might believe from the evidence that at the time of the transactions in evidence the plaintiff was not a licensed real estate agent or broker and that at such time the city of Aurora had an ordinance imposing a penalty on anyone acting as such real estate broker or agent in such city without first procuring a license."

No other declarations of law were asked or given.

The refusal of this one is assigned as error and in support of this assignment the plaintiff cites Prince v. Baptist Church, 20 Mo. App. 332; Prietto v. Lewis, 11 Mo. App. 600, and Smythe v. Hanson, 61 Mo. App. 285. Prince v. Baptist Church, supra, was a suit by Prince against the church for two and one-half per cent commission on twenty thousand dollars, claimed by Prince as compensation due him under a contract for selling the real estate of the church. Prince resided in the city of St. Louis and the property sold was situated in said city. The city had in force an ordinance making it a misdemeanor for any person to transact business as a real estate broker without a license. Prince had no license and the ordinance was interposed as a defense. In respect to this ordinance this court said: "It (the ordinance) will not prevent the enforcement of a contract between an unlicensed agent and a vendor which has been executed by the former." This case was approved in Smythe v. Hanson, supra, which was a suit by an unlicensed physician to recover for medical services. In Prietto v. Lewis, supra, the same question as in the Smythe case arose and was decided the same way. In the Prince case it is said that the license creates a contract between the city and the licensee and is essentially a question between him and the city with which third persons have nothing to do; that there is a distinction between a contract prohibited by law and one made by parties which is prohibited unless licensed.

The purpose of the ordinance read in evidence is to raise revenue for the city, not to make that which was theretofore valid invalid if the ordinance is not complied with, or to impinge upon the right of real estate agents to make contracts. Whether or not the plaintiff is a licensed real estate agent is no concern of the defendant. As was said in the Prince case, it was essentially, and we might add exclusively, a matter between the city and the plaintiff. There are authorities in other States to the contrary but they have not been

followed in this State, where it has been uniformly held that one party to a contract is not required to overlook the morals of the other or to refuse to work for him or to sell him goods because he may suspect or know that the fruits of his labor or the goods are intended to be used for an immoral purpose. Kerwin & Co. v. Doran, 29 Mo. App. 1. c. 406; Michael v. Bacon, 49 Mo. 474; Howell v. Stewart, 54 Mo. 400. To invalidate such contracts it must be shown that both parties to the contract participated in the immoral or illegal purpose. Cockrell v. Thompson, 85 Mo. 510. For a like reason we think the failure of a real estate agent or a merchant to take out a license as required by an ordinance or statute does not avoid his contracts for services rendered or goods sold, unless it is shown that both parties to such contract agreed beforehand that the ordinance or the statute (as the case might be) should be violated or that they conspired together to evade the law. Nothing of this kind was shown in the case at bar and we think the court erred in refusing the declaration of law asked by the plaintiff.

2.    But it is contended that plaintiff did not make the sale or find the purchaser and therefore did not earn his commission. Coleman, to whom the sale was made, testified that he told plaintiff he would not consider the proposition as made to him by the plaintiff and would not accept the terms of sale offered by plaintiff. Plaintiff testified that Coleman told him the price was too high and the matter seems to have been abandoned.

Finally Coleman and defendant, without the intercession of the plaintiff, got together and Coleman informed defendant that he would trade with him if he could get the Butts lot. Defendant then bought the Butts lot and afterwards sold it and his lot to Coleman as one property, including his stock of hardware. Plaintiff had nothing whatever to do with this transaction and the property as sold was never in his hands for sale. Defendant had no communication whatever with him

about buying the Butts lot or about selling the property after he purchased that lot. It may be conceded that plaintiff started the negotiations for the trade between Coleman and defendant, that he introduced the subject to Coleman and, in a sense, brought Coleman and the defendant together; but the property he was originally authorized to sell was not sold to Coleman and could not be sold to him, therefore, the sale plaintiff was authorized to make was never in fact made. Both the subject-matter of the sale and the price was varied before the sale was made, the subject-matter by adding the Butts lot to the property and the price by fixing a price on both the original lot and the Butts lot as one property. A variance in the price would not suffice to defeat plaintiff's right to recover but there was a variance in both the price and in the thing sold. Plaintiff was unable to make the sale he was authorized to make and it never was made. So far as the evidence shows, he never was commissioned to make the sale that was made, had nothing whatever to do with it, and did not even know that it was under consideration until sometime after it was consummated. He neither found a purchaser for the property he was authorized to sell nor made the sale that was made, therefore, he is not entitled to commission. Yoder v. White, 75 Mo. App. 155; Ramsey v. West, 31 Mo. App. 676; Zeidler v. Walker, 41 Mo. App. 118.

Judgment affirmed. *Reyburn* and *Goode, JJ.*, concur.