ROTHWELL, Appellant, v. GIBSON, Respondent.

St. Louis Court of Appeals, December 11, 1906.

REAL ESTATE BROKER: Commission: Written Authority. Under the Act approved March 28, 1903, which provides that any one who shall offer for sale any real property in a city of over 300,000 inhabitants without the written authority of the owner of such property or his attorney in fact, shall be guilty of a misdemeanor, a real estate agent who procures a purchaser for real estate placed in his hands for sale, in violation of the terms of the Act, cannot recover a commission from the owner, for such sale.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*R. M. Nichols* for appellant.

"Where a contract is not prohibited by law and has been fully executed by the person rendering the services, he may recover their value from the person who received

their benefit, though in rendering the services the person was guilty of a misdemeanor." Trust Co. v. Niggemann, 119 Mo. App. 56; Prietto v. Lewis, 11 Mo. App. 600; Prince v. Baptist Church, 20 Mo. App. 332; Truesdale v. McPike, 25 Mo. App. 341; Smythe v. Hanson, 61 Mo. App. 285; Chouteau v. Allen, 70 Mo. App. 209; Tooker v. Duckworth, 107 Mo. App. 231.

*C. J. Anderson* and *H. A. Loevy* for respondent.

The question involved is not at all new in English or American jurisprudence, because it has been the rule from time immemorial, that no one can have an action against another either at law or in equity if his case arises out of an illegal action or is founded upon a violation of a statute or against public policy. Gerhart v. Peck, 42 Mo. App. 644; Hurst v. Randall, 68 Mo. App. 507; Ulman Case, 167 Mo. 284; Tri-State Case, 192 Mo. 423; Tandy v. Elmore, 113 Mo. App. 233; Tooker Case, 107 Mo. App. 236; Sawyer's Case, 113 Mo. App. 226; Barlow Case, 72 Mo. 330.

BLAND, P. J.—On September 16, 1904, plaintiff, a real estate agent, doing business in the city of St. Louis (a city having more than three hundred thousand inhabitants) made a verbal contract with defendant to find a purchaser for a piece of property located on Morgan street, in said city, at seventy-five hundred dollars. Defendant agreed to pay plaintiff two and one-half per cent commission on the purchase price if he succeeded in finding a purchaser ready, willing and able to purchase the property for seventy-five hundred dollars. Plaintiff found a purchaser, who, according to his evidence, was ready, willing and able to purchase the property at said price. Defendant accepted the purchaser and entered into a written contract with him, agreeing to convey the property to him, and the purchaser paid defendant one

hundred dollars as earnest money. Defendant agreed to make a warranty deed to the purchaser, conveying a good title. The purchaser had the title examined by his attorney, who reported that he found a defect in it, whereupon the purchaser refused to carry out the contract. The suit is to recover the agreed commission.

On the trial plaintiff was nonsuited, for the reason his authority to sell the property, or offer it for sale, was not in writing. The General Assembly, in 1903, by an act, approved March 28, 1903, made it a misdemeanor, punishable by a fine of not less than ten or more than three hundred dollars, for any person, in cities of three hundred thousand inhabitants or more, to offer for sale any real property, without the written authority of the owner of such property or of his attorney in fact, appointed in writing. Under the Constitution (sec. 3, art. 4) the act took effect and went into force June 21, 1903, prior to the making of the verbal contract between plaintiff and defendant. Plaintiff having earned his commission by finding a purchaser accepted by the owner, and who was ready, willing and able to make the purchase, the question is, was plaintiff's right to recover the agreed commission cut off by the Act of 1903?

In Prince v. Eighth Street Baptist Church, 20 Mo. App. 332, Prince, a real estate agent, in the city of St. Louis, had failed to take out a license as an ordinance of the city required. He sued the defendant to recover a commission for the sale of defendant's real property he had effected. The city ordinance made it a misdemeanor to engage in the occupation of real estate agent without a license. The defendant sought to defeat plaintiff's recovery by showing the ordinance and that plaintiff had violated it. Judge ROMBAUER, in disposing of this defense, at page 334, aptly said:

"The prohibition in the law touching merchants' licenses is fully as stringent; it declares that: " 'No per-

son, or co-partnership of persons, shall deal as a merchant without a license first obtained according to law, and every person so offending shall forfeit to the State not less than fifty dollars, nor more than five thousand dollars, for every such offense, to be recovered by indictment.' [Rev. Stat., sec. 6314.]

"Yet can it be contended that any one could purchase on credit the wares of a merchant, and then refuse to pay for them on the sole ground that the merchant was not licensed to sell? This very question was very pertinently put, *arguendo*, in the opinion in Prietto v. Lewis, supra.

"What difference is there in principle between obtaining the goods in one case, and the services in another, which would require a party to pay for the goods yet enable him to take the benefit of the services without payment? We see none."

The same learned judge, in Smythe v. Hanson, 61 Mo. App. 285, in a suit by an unlicensed physician to recover the value of his professional services, where the defense was that he was guilty of a misdemeanor by practicing medicine without a license, said: "Where a contract is not prohibited by law, and has been fully executed by the person rendering the services, he may recover their value from the person who received the benefit, though in rendering the services the person was guilty of a misdemeanor, because he rendered them without a proper certificate or license for doing so."

In Tooker v. Duckworth, 107 Mo. App. 231, 80 S. W. 963, a similar ruling, under like circumstances, was made by this court on the authority of the Smythe case.

A provision in the charter of a Maryland bank prohibited any director or other officer of the bank, under penalty of fine or imprisonment, from borrowing money from said bank, was held, in Lester and Wife v. Howard Bank, 33 Md. 558, not to exempt a director from liability for money loaned to him in violation of the provision.

In a note to Smith v. Bromley, Doug., 697, Lord MANSFIELD said: "If the act is in itself immoral, or a violation of the general laws of public policy, there the party paying shall not have this action. . . . But there are other laws which are calculated for the protection of the subject against oppression, extortion, deceit, etc. If such laws are violated, and the defendant takes advantage of the plaintiff's condition or situation, there the plaintiff shall recover."

A statute of Mississippi prohibited slaves being brought into the State without a previous certificate signed by two freeholders, with a certificate of the clerk of the county from which they came, certifying that the signers were reputable freeholders. Another part of the statute imposed a fine upon the seller and buyer for bringing in slaves without the certificate.

In Harris v. Runnels, 53 U. S. 79, it was held that slaves brought in without the certificate and sold did not void the contract, and the purchaser was held to pay his note given for the purchase price. In respect to the general rule, that contracts made in violation of a public statute, are void, the court said: "Whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, that it is not to be taken for granted that the Legislature meant that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a court of justice. In this way the principle of the rule is admitted, without at all lessening its force, though its absolute and unconditional application to every case is denied. . . . That legislators do not think the rule one of universal obligation, or that, upon grounds of public policy it should always be applied, is very certain. For, in some statutes, it is said in terms that such contracts are void; in others, that they are not so. In one statute, there is no prohibition expressed, and only a penalty; in another, there is prohibition and penalty, in some of

which, contracts in violation of them are void or not, according to the subject-matter and object of the statute; and there are other statutes in which there are penalties and prohibtions, in which contracts made in contravention of them will not be void, unless one of the parties to them practices a fraud upon the ignorance of the other."

There are respectable authorities in other States which announce a contrary doctrine. Thus in Johnson v. Hulings, 103 Pa. St. 498, 49 Am. Rep. 131, and in Buckley v. Humason, 50 Minn. 195, 36 Am. St. Rep. 637, it was held an unlicensed real estate agent, subject to a penalty for doing business without a license, could not recover compensation under a verbal contract for such services. And the general rule was applied to an unlicensed commercial broker, in Holt v. Green, 73 Pa. St. 198, and to a broker dealing in mining stocks, in Hustis v. Pickands, 27 Ill. App. 270.

In Downing v. Ringer, 7 Mo. 585, the action was on a note given for the purchase price of a town lot. The note was given anterior to the acknowledgment, certifying, depositing and filing of the plat of the town. The statute then in force provided "that if any person sell, or offer for sale, any lot within any town, village, or addition, before the map or plat be made out, acknowledged, and deposited as aforesaid (in the recorder's office), such person shall forfeit a sum not exceeding three hundred dollars for every lot which he shall sell or offer to sell." The court said: "In Bartlett v. Vinor (Carth. 252, Chitty on Con., 230), Lord HOLT said, 'Every contract made for or about any matter or thing which is probihited, and made unlawful by any statute, is a void contract, though the statute itself doth not mention that it shall be so, but only inflict a penalty on the defaulter; because, a penalty implies a prohibition, though there are no prohibiting words in the statute.' This is the established modern doctrine,

and the distinction between *mala prohibita* and *mala in se,* is discarded. [Chitty on Con., p. 232.] . . .

The penalty inflicted by the act concerning plats of towns and villages, implies a prohibition against the sale of lots before the requisitions of the act are complied with, and the courts will not enforce a contract entered into against the spirit and policy of the statute." The court held the note to be void. This case was approvingly cited and followed in Mason v. Pitt, 21 Mo. l. c. 393; State ex rel. Barlow v. The Dallas County Court, 72 Mo. 330; Rollins v. McIntire, 87 Mo. l. c. 505; Live Stock Assn. v. L. & C. Co., 138 Mo. l. c. 406, 40 S. W. 107, and Tri-State Amus. Co. v. Amusement Co., 192 Mo. l. c. 424, 90 S. W. 1020. The case in hand comes clearly within the reasoning and rule of the Downing case. It is distinguishable from the case of Mercantile Trust Company v. Niggeman, 96 S. W. 293, in this: Mrs. Niggeman's son, in the name of his mother, gave the trust company written authority to sell her real estate, and this written authority was afterwards ratified by Mrs. Niggeman. The case is also distinguishable from the Missouri license cases, supra, in this: The statutes requiring a merchant and real estate broker to take out a license to do business are mere excise laws, enacted for the purpose of raising revenue. No private individual has any special interest in them nor were they enacted for the purpose of protecting the interests of private individuals, and hence no individual is in a position to invoke their non-compliance to defeat his contracts with an unlicensed merchant or real estate broker. The Townsite Act afforded protection to individuals from fraudulent sales of lots in fictitious towns and villages. The Act of 1903 was passed for the purpose of protecting the owners and holders of real property, in cities of three hundred thousand inhabitants and over, from the frauds and deceits theretofore practiced by irresponsible and dishonest real estate agents,

and every freeholder in these cities has a direct interest in the statute and has a right to invoke it for his protection.

On the authority of Downing v. Ringer and the cases cited approving the ruling therein, we affirm the judgment. All concur.