LOUIS WEINGAST, Respondent, *v.* RIALTO PASTRY SHOP, INC., and Others, Appellants, Impleaded with PHILIP SCHNEIDER, Defendant.

First Department, December 18, 1925.

Brokers — real estate broker — unlicensed real estate broker prohibited by Real Property Law, §§ 440-a and 442-e, from recovering commissions for sale of restaurant business in New York city, including six-year lease, good will and fixtures — lease is interest in real estate within Real Property Law, § 440.

An unlicensed real estate broker is prohibited by sections 440-a and 442-e of the Real Property Law from recovering commissions for the sale of a restaurant business located in New York city, which sale includes a six-year lease of the building in which the restaurant is located, the good will of the business and the fixtures used in it, for the principal item of the sale was the lease which is an interest in real estate within the meaning of section 440 of the Real Property Law.

FINCH, J., dissents, with opinion.

APPEAL by the defendants, Rialto Pastry Shop, Inc., and others, from a judgment of the County Court of Bronx county in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 31st day of October, 1924, upon the verdict of a jury, and also from an order entered in said clerk's office on the 6th day of November, 1924, denying said defendants' motion for a new trial made upon the minutes.

*Lester M. Friedman* [*Alexander Rosenbaum* of counsel], for the appellants.

*Lesser & Lesser* [*Harry Lesser* of counsel], for the respondent.

First Department, December, 1925.                    [Vol. 214

DOWLING, J.:

The complaint herein sets forth, after alleging the incorporation of the defendant Rialto Pastry Shop, Inc.:

" *Second.* That heretofore and on or about April 1st, 1923, the defendants employed the plaintiff in his capacity as broker, to procure a customer for the defendants for the sale of the store which the defendant corporation owned upon certain stated terms and conditions.

" *Third.* That thereafter the plaintiff did, through his efforts, procure a customer who was ready, willing and able to, and in fact did, purchase the said business from the defendants for the sum of $28,000.00.

" *Fourth.* That the agreed commission was 5% of the purchase price, amounting to $1,400.00."

It is then alleged that defendants are indebted to plaintiff in the sum of $1,400, no part of which has been paid, though duly demanded.   Upon the face of the complaint the action was brought by a broker for his commissions upon the sale of a store or business.

Upon the trial, however, it appeared that what the broker sold and for which he claimed his commission, was not merely the " store " or " business," as alleged in the complaint.   This first appeared when the learned trial court asked him: " Q. What were they selling?   You say they wanted $28,000?   A. They will take about twenty-seven.   Q. What were they selling; what was this man going to get for his $28,000?   A. The store, the lease; the rent is $4,200, and he gives him a guarantee for over $2,000 business." The latter figure refers to the aggregate weekly sales of the store. He then enumerates what was sold as " the store and the lease and the good-will, and tables and everything."

Upon plaintiff's cross-examination it was developed that included in the sale was a six-year lease of the premises in which the business was conducted, the yearly rental being $4,200.   There being some question about the unexpired term of the lease, he was asked: " Q. And you mean to tell the jury now that you do not know if a store has a seven-year lease it is not better than a six-year lease?   A. Seven years is better, but six years for that price they said they wanted for the place, it is worth the money. It was a good sale for a six-year lease."   And further: " Q. The main thing in a restaurant or any other business is the lease, is it not?   A. Yes."

Plaintiff claimed to be a " business broker," and his counsel admitted that he did not claim he was a licensed real estate broker.

At the close of plaintiff's case defendants' counsel made a motion to dismiss, as follows: " Mr. Friedman: The defendant

moves to dismiss the complaint upon the ground that it appears affirmatively from the evidence of the plaintiff, that the sale here involved, the sale of a leasehold which, according to the testimony of the plaintiff, was for at least six years, and under circumstances which involves an interest in real estate, and for the sale of which, the plaintiff, in order to be entitled to any commission whatsoever, should not only plead but prove that he was at that time a real estate broker." The motion was denied and exception duly taken.

The plaintiff had offered in evidence the written agreement of the sale which recites that the Rialto Pastry Shop, Inc., " agrees to sell and the parties of the second part agree to buy the restaurant and lease belonging to the party of the first part on premises 1052–1056 Southern Boulevard, in the Borough of Bronx, City of New York, including fixtures and merchandise on hand as of May 18th, 1923, and of good-will appertaining to said business, free and clear of any and all debts." The lease was duly assigned to the purchasers. It ran until April 30, 1929, and was recorded as a conveyance of real estate. Of the purchase price of $26,150, $15,500 was to be paid by notes secured by a mortgage on the lease and fixtures, which was in fact executed.

At the close of the whole case defendants' counsel renewed his motion to dismiss the complaint. He said: " I renew my motion to dismiss the complaint upon the ground that from the evidence it shows that this was the sale of a place involving a lease for more than 5 years, and that, therefore, it was a chattel real, under which no claim for brokerage could be made unless the plaintiff was a duly licensed real estate broker. The plaintiff neither alleges it nor proves it. The Court: I will deny your motion. Mr. Friedman: Exception."

The case thus presents squarely the question of whether one who is not a licensed real estate broker can recover commissions upon the purchase price of a store, its business, fixtures and good will, which includes as well the sale of a lease upon the premises for more than five years, and which lease is concededly the " main thing " in the sale.

Concededly, the lease in question was an interest in real estate. The statute regulating the licensing of real estate brokers (Laws of 1922, chap. 672, adding to Real Prop. Law, art. 12-A) provides in section 440 of said Real Property Law, as follows:

" § 440. Definitions. Whenever used in this article ' real estate broker ' means any person, firm or corporation, who, for another and for a fee, commission or other valuable consideration, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of an estate or interest in real estate,

or collects or offers or attempts to collect rent for the use of real estate, or negotiates, or offers or attempts to negotiate, a loan secured or to be secured ·by a mortgage or other incumbrance upon or transfer of real estate." (See, also, Laws of 1924, chap. 579, since amdg. said § 440.)

The lease in question being an interest in real estate, the statute applies to the transaction in question.

Then follows·the following provision of section 440-a of said Real Property Law:

" § 440-a. License required for real estate brokers and salesmen. On and after the first day of October, nineteen hundred and twenty-two, no person, copartnership or corporation shall engage in or follow the business or occupation of, or hold himself or itself out or act temporarily or otherwise as a real estate broker or real estate salesman in a city or in a county adjoining a city having a population of one million or more, without first procuring a license therefor as provided in this article." (See, also, Laws of 1923, chap. 517; Laws of·1924, chap. 579, and Laws of 1925, chap. 461, since amdg. said § 440-a.)

It is conceded that plaintiff had never procured such a license.

Section 442-e of the said Real Property Law reads as follows:

" § 442-e. Actions for commissions; license prerequisite. No person, copartnership or corporation shall bring or maintain an action in any court of this State for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and providing [*sic*, proving] that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose." (See, also, Laws of 1924, chap. 579, since amdg. said § 442-e.)

To allow the plaintiff to recover upon his present cause of action would be in clear opposition to the terms of the statute. It would encourage evasions and subterfuges by which the. salutary provisions and purpose of the statute could be evaded. The sale of the lease of the premises in which the restaurant was conducted was not a mere incident or appendage to the transaction; it was the main consideration for the transfer. The negotiation of the sale of this interest in real estate was the principal feature of the dealings between the parties, so much so that $15,500 out of the $26,150 paid for the entire purchase remained unpaid, represented by notes secured by a mortgage upon that very lease, which in itself gives a fair idea of the important part it played in the purchase price of business and lease combined.

Under plaintiff's theory any so-called " business broker " could

manipulate a transaction so as to have a small amount of fixtures or tables (as in this case) or other personal property included as part of the things sold, and then recover his brokerage upon the whole amount of the purchase price paid, substantially all of which in reality would be represented by the value of the real estate or interest in real estate sold at the same time, even though he was not licensed.

A broker cannot by merely calling himself a " business broker " and having some personalty included in a sale, recover the commissions upon the sale of real estate or an interest therein, which latter he could recover only if he was a licensed real estate broker or salesman.

The Legislature deemed the need for supervision and licensing of real estate brokers and salesmen so great that it not only prohibited an action to recover brokerage by an unlicensed broker, under section 442-e of the Real Property Law (*supra*), but by section 442-f of said Real Property Law (as added by Laws of 1922, chap. 672) it made any violation of the provisions of article 12-A of the Real Property Law a misdemeanor, and provided that if the offender had received any money on account of his commissions, he should also be liable to a penalty of not less than the amount so received, nor more than four times the same, to be collected by any person aggrieved. (See, also, Laws of 1924, chap. 579, since amdg. said § 442-f.)

For the reason that the main thing which was the subject of the sale herein was an interest in real estate, the lease being the principal inducement for the purchase, and because plaintiff was not licensed as a real estate broker, I am of opinion that he cannot recover his commissions upon the aggregate purchase price and that the motion to dismiss the complaint should have been granted.

The judgment and order appealed from should, therefore, be reversed, with costs to appellants, and the complaint dismissed, with costs.

CLARKE, P. J., MERRELL and BURR, JJ., concur; FINCH, J., dissents.

FINCH, J. (dissenting):

I dissent on the ground that what was here sold was a restaurant business, consisting of good will, a guaranty that the place took in at least $2,000 per week, a six-year lease, fixtures, etc. The test as to whether the thing sold was within the statute would seem to be whether it could be said to be a unit in itself and different from the various elements which make it up. So long as the thing

sold can be said to be such a unit different from any of the parts which go· to make it up, the proportionate value that the interest in real estate bears to the whole becomes immaterial. Even though the lease happened to be the most important part of the thing sold, yet the thing sold was a unit, different in itself from its component elements standing by themselves. There would not seem to be any public policy requiring the court to give such a broad construction to the statute licensing real estate brokers as to hold that it would include all whose business had any occasional incidental relation to real estate, rather than to those only who sold real estate as such. By the construction adopted by this court, this statute would require a license to be taken out by all brokers, no matter what their line of business, provided that in any way a sale of any interest in real estate might incidentally become involved in any transaction. I have been unable to find a case in the courts of our State that is squarely analogous. A case in the Federal courts (*Reichardt* v. *Hill,* 236 Fed. 817), although construing an ordinance requiring a license of persons who for a commission negotiate the sale of goods, wares or merchandise, rather than real estate, is nevertheless interesting. There the court said: " In fixing the selling value of the stores, the stocks of goods, it is true, were estimated at current wholesale prices; but the other things entering into the sale involved estimates of value and also negotiations before the total value and price were agreed on. Can it be that all this involved simply a purchase and sale of ' goods, wares, or merchandise, or other articles of commerce ' within the true intendment of the ordinance? The fact that there were articles in each of these stores, say a stock of goods, which if separately considered would fall within the descriptive words of the ordinance, cannot justify the isolation of those articles for the purpose of treating them as the subjects of separate sales; they, like the other things sold, are to be regarded as constituting essential parts of an exceptional and unitary subject matter of sale; certainly this must be true as respects a comparison of such a sale with the sales contemplated by the ordinance."

I, therefore, vote to affirm the judgment appealed from.

Judgment and order reversed, with costs, and complaint dismissed, with costs.