JOSEPH G. DILLARD et. al., Respondents, v. LILLIE B. FIELD et al., Appellants.

Kansas City Court of Appeals, February 3, 1913.

1. BROKERS: Commission: Right to. To solve the problem of a broker's right to commission, two things must be kept in mind: 1st. What was the broker employed to do? 2d. Has he completed his undertaking? If he was employed to do a certain thing and has accomplished that thing within the time required, or, where no time is specified, within a reasonable time, then he is entitled to his commission.

2. ———: ———: **Changed Conditions.** Where a broker is employed to sell either the whole or certain specified parts only of a farm, and in the effort to sell one of those parts, introduces a prospective buyer to the owner but no sale is effected, and nothing more is done for eight or ten months, when the owner, through no help or assistance of the broker sells a portion of the farm to another buyer, which sale so changed the farm as to make possible the sale of a different portion of the remainder from any that could have been sold prior thereto, the fact that the former prospective buyer, through no help or assistance of the agent, learns of the changed conditions and renews negotiations which result in a sale to such buyer of a different part from that shown to him in the first place, does not entitle the agent to commission, in the absence of bad faith on the part of the owner.

3. ———: ———: **Disclosure of Purchaser.** Wherever an introduction, or advertisement, or disclosure of purchaser is relied on to entitle the broker to commission, the evidence must show that such was the foundation of the negotiations which resulted in a sale although conducted and concluded by the owner. When the evidence shows that the introduction was only a link in a chain of causes and not the *causa causans*, the broker cannot recover.

4. ———: ———: **Variation in Both Price and Thing Sold.** Where the sale made varies from the broker's contract, both in price and in the thing sold, there can be no recovery of commission.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge.

REVERSED.

*G. W. Barnett* for appellants.

*W. D. O'Bannon* and *W. D. Steele* for respondents.

TRIMBLE, J.—Respondents, real estate brokers, doing business as Dillard Brothers Realty Company, sued appellants, who are husband and wife, for commission on a sale of real estate. Appellants filed a demurrer to the evidence which was overruled and judgment rendered against them. Their contention here is that, under the law and the undisputed facts, respondents had no case.

In the summer of 1910, appellants, having a farm of 280 acres, placed it in respondents' hands to sell. There was no exclusive agency as it was also listed with several other agents. Shortly thereafter appellants sold off forty acres leaving the remaining 240 with respondents and the other agents as before. The house and other improvements were located on the south forty of the west eighty, and immediately adjoining this eighty on the east was a sixty. The county road ran east and west along the south ends of this sixty and eighty and then turned north along the west side of the eighty. These facts are stated to show that when appellant authorized respondents to sell either parts or the whole of said farm, they of necessity authorized a sale of only particular parts thereof but not any portion which might be carved out of the 240. They were willing to sell either the north forty of the west eighty, or they would sell the entire west eighty or they would sell this west eighty and the west thirty acres of the adjoining sixty, making 110 in all, or they would sell the entire farm. This was no arbitrary whim or caprice with them. They could not do otherwise. The north forty was cut up by ravines and was thinner and poorer land. If they sold the south forty, or the south forty and any thirty of the adjoining sixty they would practically isolate the north forty and greatly injure its subsequent sale, besides deprive themselves of a good building site for the rest of the farm, which site was on the south end of the sixty and fronted on the east and west road.

Plaintiffs' petition says they were employed to procure a purchaser for, or make a sale of, defendants' farm, or *any* part thereof. The evidence, however, is that in selling only a part of said farm, respondents were authorized and employed to sell only those parts indicated above. In other words, plaintiffs were employed to procure a purchaser for, or to make a sale

of, either the whole of said farm, or the above mentioned parts only.

About the middle of July, 1910, one of respondents found a Mr. Emery Rutt and took him out to appellants' farm, introduced him to Mrs. Field and tried to sell him the west eighty. The agent claims that he tried to sell him the whole farm and that Rutt saw more than the aforesaid eighty. Rutt, however, says he went out there wanting only eighty acres, that he was shown only the west eighty and did not consider any more than eighty, or any other part of said farm. Mrs. Field says that when the agent introduced Rutt to her he said, ''I have brought Mr. Rutt out for the purpose of buying this eighty acres.'' Whatever may be the truth of this, the undisputed evidence is that the negotiations had between Rutt and Mrs. Field and between Rutt and the agent were solely over the west eighty. Respondents admit that the price discussed was solely on the west eighty or the whole farm and not upon any seventy acres. Rutt objected to the poor and broken north forty and to the price of $165 per acre or $13,200 for the eighty. He and the agent left and on the way home Rutt told the agent that if he could get the eighty for $10,000 he might consider it. But these terms the agent was unable to procure. Rutt says the agent never said anything to him about it afterwards, but the latter claims that he mentioned the matter to him at different times but it was always in reference to the west eighty. He was unable to get anywhere with him, however, as Rutt would not even consider terms. The agent never took Rutt to the farm again, nor did he try to sell him any land other than the west eighty, nor was he requested by the appellants to sell any other particular part. In fact, attempts to sell to Rutt ceased on the part of plaintiffs.

Matters ran along thus from July, 1910, to June

Dillard v. Field.

1, 1911, when Mrs. Field sold the north forty to one Thistlewaite. Respondents had nothing to do with this and knew nothing of it. A few days later Rutt's father-in-law, Mr. Bowman, learning that this objectionable forty had been sold and, thinking that possibly another portion could be purchased, went to the Field farm and began negotiations which resulted in a purchase for Rutt by Bowman of seventy acres, forty of which was the south forty of the west eighty but thirty of which was a different thirty from that comprising the 110 acres, which the Fields had originally agreed with respondents they would be willing to sell in a sale of only a part of the farm. It is over the sale of this seventy acres that the controversy here rages. Respondents admit that after the sale of this north forty to Thistlewaite, appellants never asked them to sell this particular seventy nor any other part only of the farm left. They claim, however, that Mrs. Field did talk to them about a sale of the whole after June 1, 1911, the date of the sale to Thistlewaite, and that inasmuch as the Fields did not tell them they had sold the forty and no different arrangements were made with them, the remainder of the farm was still left in their hands on the same terms as before, that is, to sell it either in part or in whole, and, if a part only were sold, they were to receive a commission on the part sold. Respondents' evidence as to the original terms is as follows: "The original arrangements were to sell the farm if we could find a buyer for her. I asked Mrs. Field how small an amount she would sell. *She said she would sell forty, eighty or one hundred and ten acres or the whole and that is about all there was to that arrangement. Whatever we sold* we were to receive our regular commission of 2½ per cent on whatever the price was on whatever she agreed to sell for."

It will be seen from the foregoing statement that, if respondents are entitled to commission, it is based

Dillard v. Field.

solely on the introduction of Rutt to Mrs. Field brought about by respondents at the time they were trying to get Rutt to buy the west eighty. At that time no one was contemplating the sale of the seventy, and so long as the north forty remained unsold, it was never thought of being offered for sale, except as included in a sale of the whole. The only work done by respondents was to introduce Rutt to the Fields and attempt to sell him the west eighty. In this they failed, and, so far as outward manifestations are concerned, the matter was dropped. They made no efforts to sell Rutt any other part of said farm, nor were they requested or authorized by the owners to sell the seventy after Thistlewaite had bought his forty. Nor did respondents have anything to do with the sale to Thistlewaite or with the negotiations begun by Mr. Bowman for the purchase of the seventy. In fact, they did not keep in touch with matters close enough to learn of the Thistlewaite sale until after Bowman had purchased the seventy, although the Thistlewaite deed was recorded June 1, and Bowman began his negotiations for the seventy acres about the first of July, not knowing that respondents had anything to do with the land. In order to solve the puzzling and sometimes difficult question whether an agent is entitled to his commission, two questions should be steadily kept in mind: 1st, what was the agent authorized or employed to do? 2nd, has he completed his undertaking? Plaintiffs' theory is that they were authorized to sell the whole farm or any part whatever thereof, regardless of where it was. But the facts and the evidence show that they were authorized to sell only certain specified parts; that they never attempted to sell the part for which commissions are now claimed, and this part could be sold by them only as included in a sale of the whole. In the attempt to sell the west eighty they introduced a man to the owners but no sale was ever consummated. In other

words, their efforts failed. After the lapse of eight or ten months the situation of the owners changed by reason of their being able, through no efforts nor influence of respondents, to rid themselves of the Thistlewaite forty. They are now in a position where they can carve out and sell a seventy and still keep their building site for the remaining land they own. No new contract is made with respondents; they are not asked to sell this seventy nor do they do anything to further its sale. Nor do the owners hunt up the man they had originally met through respondents' efforts and make use of that introduction. On the contrary, Mr. Bowman, *hearing* of the sale of the Thistlewaite forty, took it upon himself to see if he could not buy a different portion of the farm for his son-in-law, Rutt, and went over to the Fields' farm and opened up negotiations which were successful. In other words, respondents did not procure a purchaser for the seventy acres, nor did their efforts, after the owners were in a position to sell same, have anything to do in bringing about a sale. Whenever an introduction, or advertisement, or disclosure of purchaser, is relied on to entitle a broker to commission, the evidence must show that it was the *foundation* of the negotiations which resulted in a sale although conducted and concluded by the owner. Even if the introduction of Rutt in the first place could be said to have anything to do with the sale that afterward took place ten months later and under changed conditions, still this was only a link in a chain of causes and not the *causa causans*. In order for respondents to recover, the evidence must show that their efforts were the procuring cause and not merely one of a chain of causes. [Russell v. Poor, 133 Mo. App. 723.] Here also the sale made varies from respondents' contract both in price and the thing sold. Hence there can be no recovery. [Tooker v. Duckworth, 107 Mo. App. 231.]

Judgment reversed. All concur.