BYERS *v.* WILLIAMS.

BROKERS—COMMISSIONERS—CONTRACTS.

> In assumpsit by a broker for commissions on the sale of real property that he knew was in the hands of other agents at the time he showed the same to a prospective buyer, who closed the deal through the other firm on terms lower than plaintiff was authorized to propose, the burden of showing that his services were the efficient procuring cause, rests upon plaintiff, and evidence that he merely brought the real estate to the purchaser's attention is insufficient.[1]

Error to Calhoun; North, J. Submitted April 8, 1913. (Docket No. 5.) Decided May 28, 1913.

Assumpsit by Andrew J. Byers against William J. Williams for broker's commissions. Judgment for plaintiff. Defendant brings error. Reversed; new trial denied.

*Duane C. Salisbury,* for appellant.

*James M. Powers,* for appellee.

STONE, J. This is an action of assumpsit to recover commissions claimed to be due the plaintiff. The plaintiff's bill of particulars was for services of plaintiff in procuring a purchaser, and acting as agent for defendant in the sale of his farm. In 1910 defendant

---

[1] On the question when a real estate broker is considered as the procuring cause of a sale or exchange, see note in 44 L. R. A. 321. And as to the broker's right to commission when sale is made by owner in ignorance of broker's instrumentality in procuring purchaser, see note in 8 L. R. A. (N. S.) 153.

As to the right to commissions where two or more real estate brokers acting for the same person are instrumental in effecting a sale of property to a certain purchaser, see notes in 23 L. R. A. (N. S.) 164 and 27 L. R. A. (N. S.) 195.

was the owner of a farm of 100 acres located near the city of Battle Creek. He had listed the farm for sale both with the plaintiff and the firm of Marshall & Taft.

Plaintiff testified that defendant first spoke to him about procuring a purchaser about one year prior to October 22, 1910. Plaintiff listed it in his book as follows: "Williams 100 A. $7,500." And defendant told plaintiff he would sell the farm for $7,500. Nothing was said about terms, and plaintiff did not ask defendant about terms, and plaintiff knew that he was not to have the exclusive sale, and he had heard that the farm was also listed for sale with the firm of Marshall & Taft; and plaintiff testified that he recognized the right of defendant to list the farm with any other real estate dealer he saw fit. The farm was sold to Thomas A. Carr and wife by contract on November 14, 1910, through the real estate agency of Marshall & Taft, for the sum of $7,000, and defendant paid that firm the sum of $140 as commissions on the sale. Prior to buying the farm Mr. Carr lived in Kalamazoo county. He had a son-in-law by the name of Marion Krum, who lived with his father on a farm near Battle Creek, and Mr. Carr requested this son-in-law to look for a farm, and he would buy it, if satisfactory, and the son-in-law could work it.

Plaintiff testified that a hired man of Mr. Krum's told him that Mr. Carr and Mr. Krum wanted to buy a farm, and he (plaintiff) requested the hired man to tell Mr. Krum to come and see him before he purchased; that he had a lot of good farms, and would like to show him some. Plaintiff also testified that on October 22, 1910, in accordance with a previous arrangement made over the telephone with Mr. Krum, Mr. Carr, Mrs. Carr, and Marion Krum came to plaintiff's place of business; that he hitched up a team and took them to inspect several farms in the vicinity of Battle Creek; that in all they inspected four on

the trip, including the farm of the defendant.  After inspecting the farms, the party returned to Battle Creek, and Mr. and Mrs. Carr and Marion Krum left plaintiff and went to supper.  After supper Mr. Krum came back again and got his horse to go home, and said:  "We will talk it over and let you know in a few days."  Plaintiff testified that he had never met Mr. Carr before October 22d, and that was the only time plaintiff showed him a farm; that on said date Mr. Carr asked plaintiff the price of the farm, and plaintiff told him $7,500, and that Mr. Carr did not make plaintiff any offer for the farm; that plaintiff had no further conversation with Mr. Carr until after the sale.  Plaintiff on cross-examination testified:

"Mr. Carr did not tell me he would come and see me; his son-in-law, young Mr. Krum, did.  I knew Marshall & Taft were also trying to sell the farm, but not to this party.  It didn't make any difference who they sold it to.  I knew they had the farm for sale, and the going commission was 2 per cent.  *  *  *

"Q. Now, so far as your relations to Mr. Carr are concerned, the man who finally purchased this property, you did nothing else than take him out one day and show him this farm in connection with three or four other farms, is that right?

"A. Yes."

It further appeared that plaintiff never asked Mr. Carr to make an offer for the farm, and never told defendant that he had a purchaser for the farm at a price less than $7,500.

Mr. Carr was called as a witness for the plaintiff, and after testifying, among other things, that he bought the farm without looking at it again after plaintiff had showed it to him, on cross-examination the following appears:

"Q. Did you know that your son-in-law, Mr. Krum, told Mr. Byers that he would see him later?

"A. Not that I remember, no, sir; and I never saw Mr. Byers after that time, and he never came to see

me; neither did he ever write me a letter regarding it, or ever phone to me; probably it might have been four to six weeks, I could not tell. In the meantime I had looked at other farms in the county. I went back home to Kalamazoo county, and came back. I went to Marshall & Taft's through my son-in-law's father. He took me to Marshall & Taft's office. That was about four weeks after I had been to the farm with Mr. Byers, and gone to my home in Kalamazoo county, and returned. Before that time I had not known Mr. Williams; I had never met him up until that time.

"*Q.* Now what occurred between you and the real estate firm of Marshall & Taft in relation to this farm?

"*A.* Mr. Marshall phoned out to Mr. Krum, and we went to Marshall & Taft's. They had not called our attention to any other farm except the Williams farm, and I, my son-in-law, and his father acting for me had considerable conversation about the Williams farm, and finally I made a proposition to Marshall & Taft, and that proposition was reduced to writing.

"*Q.* Was Mr. Williams present when that was made?

"*A.* No, sir."

The following was the proposition:

"MARSHALL & TAFT,
"Real Estate, Insurance, Loans and Rentals.
"J. L. Marshall.        H. W. Taft, 8 E. Main St.,
"BATTLE CREEK, MICH., Nov. 14, 1910.

"We, the undersigned, will purchase the 100-acre farm known as the Williams farm, located in Penfield township, section 30, Calhoun Co., and State of Mich., for the sum of $7,000, and pay for the same in the following manner: On or before March 15, 1911, the full amount in cash. Free and clear title to be given and abstract to date. Mr. Williams hereby assigns his interest, which is one-half of the grain now sown on the premises. Purchaser to pay one-half of machine bill and one-half the fuel bill for threshing.

"I herewith hand you check for $300 to apply on purchase price of property.

"T. A. CARR."

This proposition and check were taken by Mr. Mar-

shall to the defendant, who, after some parley, wrote at the bottom of the proposition the following words: "I accept above offer and terms. W. J. Williams." Defendant then came with Mr. Marshall to the latter's office, and a further agreement was written, and signed by Mr. Carr and the defendant, fixing the time of possession March 1, 1911, and a forfeiture clause of $1,000 should either party fail to fulfill the agreement.

It was undisputed that the firm of Marshall & Taft had advertised this farm for sale for four or five months in the papers at Battle Creek.

Suit was soon begun by plaintiff to recover the commissions claimed. The foregoing fairly represents the claim of the plaintiff upon the trial. He recovered a verdict and judgment in the sum of $144.86 and costs. The defendant has brought the case here on writ of error, and by proper assignments of error claims that upon the plaintiff's own showing he failed to show that he was the procuring cause of the sale of defendant's farm, that there was no question of fact to be submitted to the jury, and that the trial court erred in not directing a verdict for the defendant.

Defendant relies upon the following decisions of this court: *Wood* v. *Smith,* 162 Mich. 334 (127 N. W. 277) ; *Thuner* v. *Kanter,* 102 Mich. 59 (60 N. W. 299) ; *Douville* v. *Comstock,* 110 Mich. 693 (69 N. W. 79) ; *Brooks* v. *Leathers,* 112 Mich. 463 (70 N. W. 1099) ; *Antisdel* v. *Canfield,* 119 Mich. 229 (77 N. W. 944).

In our opinion the defendant is correct in his contention. We think that it clearly appeared that plaintiff was not the procuring cause of this sale, on his own showing. He understood that he did not have the exclusive agency for the sale of defendant's farm. He knew that the farm had been listed with Marshall & Taft, the firm which consummated and brought about the sale, upon terms which the plaintiff had never offered, or been authorized to offer, to the purchaser.

In *Whitcomb* v. *Bacon*, 170 Mass. 479 (49 N. E. 742, 64 Am. St. Rep. 317), it was held that where a broker does not have the exclusive sale of real estate, he does not entitle himself to a commission merely by showing that his efforts and services were one cause amongst others which contributed to bring about the sale, and that but for them the sale would not have been made, but he must go further and show that his efforts and services were the effective, or the predominating efficient, means of bringing about the sale. Merely bringing the property to the attention of the person who finally buys it is not sufficient in such a case. *Dowling* v. *Morrill*, 165 Mass. 491 (43 N. E. 295).

One broker, who is unsuccessful in effecting a sale, does not become entitled to a commission upon the success of another. *Ward* v. *Fletcher*, 124 Mass. 224; *Crowninshield* v. *Foster*, 169 Mass. 237 (47 N. E. 879).

For a collection of cases upon this subject, see note to *Hoadley* v. *Savings Bank of Danbury*, 44 L. R. A. 333-344 (71 Conn. 599).

We are of opinion that the court erred in not charging the jury as requested by defendant, and in not directing a verdict for defendant.

The judgment of the circuit court is reversed; and, as from plaintiff's own showing he is not entitled to recover, no new trial is granted.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.