ROY M. FARMER v. C. D. HOLMES and J. E. Bakke, Partners as Holmes & Bakke.

(160 N. W. 143.)

Quantum meruit — action on — test of — work done — at request of defendant — reasonable value.

1. The test of an action on the *quantum meruit* is that the plaintiff shall first allege the doing of the work, at the request of the defendant, and that for the work he reasonably deserves to have a specified sum.

NOTE.—The general rule is that a broker has performed his contract and is entitled to his commissions when he is the procuring cause of sale, even though the

**Complaint — quantum meruit — cause of action.**

2. Complaint examined, and held to state an action on the *quantum meruit*.

**Landowner — agent to sell — sending lists to — prospective purchasers — influence by agent — at request of landowner — services of agent — reasonable value of — recovery may be had.**

3. If a landowner sends to an agent various lists of land at a certain net price, and the agent interests a prospective purchaser, and such purchaser refuses to pay the list price and wants more land than that offered, and is referred by the agent to the principal to see if he can make a deal with him, and the principal keeps on dealing with the prospective purchaser both by himself and through the agent, and urges the agent to continue using his influence with the purchaser, and afterwards the principal meets with the purchaser alone and effects a sale for less than the list price and for more land than actually listed, but yet contemplated in the transactions between the purchaser and the agent, such agent can recover from such principal and on the *quantum meruit* a commission on such sale for his services performed.

**Real estate agent — furnishes buyer — terms of — sale made — satisfactory to client — services — reasonable value — may recover.**

4. Where a real estate agent furnishes a buyer upon terms which, even though not originally contemplated, are satisfactory to his clients, and a sale is made on such terms, such agent will be entitled to recover the reasonable value of his services rendered.

**Real estate agent — procuring cause — of sale — jury — question for.**

5. Whether the real estate agent was in fact the procuring cause of the sale which was consummated is held in the case at bar to be a question for the jury, and not for the court, to pass upon.

**Real estate agent — employment of — lists of lands furnished — procures buyer — acceptable to principal — third party — agent acts through — immaterial.**

6. Where a real estate agent is employed to furnish a buyer upon terms acceptable to his principal, and such principal is himself to consummate the agree-

---

sale is effected by the owner himself, as will be seen by an examination of the cases in an extensive note in 44 L.R.A. 321, on when real estate broker is considered as the procuring cause of the sale or exchange effected.

On effect upon the right to commissions, of fact that the owner sells to broker's customer at reduced price, see notes in 15 L.R.A.(N.S.) 272, and 34 L.R.A.(N.S.) 1050.

On right of broker to recovery of commissions on *quantum meruit* in case of a revocation of his authority, see note in 38 L.R.A.(N.S.) 369. On his right to so recover when he secures a purchaser for part of the property, see note in 51 L.R.A. (N.S.) 258. Also see note in 139 Am. St. Rep. 235.

ment or sale, it is immaterial whether such agent acts by himself or through a third party, and whether there is one or two joint vendees, provided the vendee or vendees are acceptable to the principal, and which fact will be presumed from the mere closing of the deal.

**Offer of proof — evidence — exclusion of — error — assignment.**

7. A party must offer to prove the facts sought to be elicited from his witness before he can assign error upon an objection sustained to a question, the competency of which is not apparent on its face.

**Instructions — jury — procuring cause — original discovery — broker — purchaser.**

8. It was not an error to instruct the jury that "the words procuring cause as applied to this case mean, that if you find from a fair preponderance of the evidence that the contract was as plaintiff claims, then a procuring cause means the original discovery of the purchaser by the broker, and the starting of the negotiations by him, together with the final closing by or on behalf of his client with the purchaser."

Opinion filed November 18, 1916.

Appeal from the District Court of Cass County, *Chas. A. Pollock,* J. Action to recover for commissions earned.

Judgment for plaintiff. Defendants appeal.

Affirmed.

*Lawrence & Murphy,* for appellants.

"Recollections are somewhat dim and impressions deceitful and illusory, but the written words stand and speak a uniform language." Kent v. Manchester, 29 Barb. 595; 1 Moore, Facts, p. 16.

"If the amount of compensation is fixed by express contract, the broker is not entitled to a reasonable compensation independently of the contract." 19 Cyc. 236; McDermott v. Abney, 106 Iowa, 749, 77 N. W. 505; Beatty v. Russell, 41 Neb. 321, 59 N. W. 919; Evans v. Gay, — Tex. Civ. App. —, 74 S. W. 575; 4 R. C. L. § 67, p. 332; Beatty v. Russell, 41 Neb. 321, 59 N. W. 919.

Where the agent finds no purchaser on the terms of the contract with his principal, he cannot recover compensation. Even if he furnished information that was beneficial, there would, at most, be only a moral obligation to pay. Babcock v. Merritt, 1 Colo. App. 84, 27 Pac. 884.

It is immaterial that the principal himself made the sale, where

there is no proof that any purchaser produced by the broker was ready and willing to buy at the price named in the contract. Illingsworth v. Slosson, 19 Ill. App. 614; Childs v. Ptomey, 17 Mont. 509, 43 Pac. 714; Ball v. Dolan, 18 S. D. 558, 101 N. W. 712; Ames v. Lamont, 107 Wis. 531, 83 N. W. 780; McArthur v. Slauson, 53 Wis. 41, 9 N. W. 784; Anderson v. Johnson, 16 N. D. 174, 112 N. W. 139; Milligan v. Ownes, 123 Iowa, 285, 98 N. W. 792.

The term "purchaser" means one who buys the property offered for sale. The plaintiff furnished no purchaser for defendants' lands. Snyder v. Hitt, 2 Dana, 204; Halbert v. McCulloch, 3 Met. 456, 79 Am. Dec. 556; Camden & T. R. Co. v. Adams, 62 N. J. Eq. 656, 51 Atl. 26; Eldridge v. Kuehl, 27 Iowa, 173; Curtis v. Burdick, 48 Vt. 171.

It is not sufficient that the agent's or broker's acts are one of a chain of causes leading to the contract, as such acts must be the procuring or inducing causes, the causans. Gilpin v. Davis, 2 Bibb, 416, 5 Am. Dec. 622; Ramsey v. West, 31 Mo. App. 678; Alden v. Earle, 121 N. Y. 688, 24 N. E. 705; Warren v. Cram, 71 Mo. App. 638; Garcelon v. Tibbetts, 84 Me. 148, 24 Atl. 797; Viaux v. Old South Society, 133 Mass. 10; Loud v. Hall, 106 Mass. 407; Tombs v. Alexander, 101 Mass. 255, 3 Am. Rep. 349; Kock v. Emmerling, 22 How. 69, 16 L. ed. 292; Glentworth v. Luther, 21 Barb. 147; Drury v. Newman, 99 Mass. 256; Sibbald v. Bethlehem Iron Co. 83 N. Y. 378, 22 Am. Rep. 441; Cook v. Welch, 9 Allen, 350; Rockwell v. Newton, 44 Conn. 337; Lunney v. Healey, 56 Neb. 313, 44 L.R.A. 596, 76 N. W. 558.

The fact that the broker's efforts are instrumental in enabling the defendants to sell is not sufficient to satisfy the contract. Charlton v. Wood, 11 Heisk, 19; Davis v. Gassette, 30 Ill. App. 45 and cases cited; Hoadley v. Savings Bank, 44 L.R.A. 348, note; Byers v. Williams, 175 Mich. 385, 141 N. W. 571.

Plaintiff must have been the direct and procuring cause of the sale. Murray v. Currie, 7 Car. & P. 584, 2 Eng. Rul. Cas. 527; Wilkinson v. Martin, 8 Car. & P. 5, 2 Eng. Rul. Cas. 529; Hungerford v. Hicks, 39 Conn. 259; Gillespie v. Wilder, 99 Mass. 170; Tombs v. Alexander, 101 Mass. 255, 3 Am. Rep. 349; Earp v. Cummins, 54 Pa. 394, 93 Am. Dec. 718; Lyon v. Mitchell, 36 N. Y. 235, 93 Am. Dec. 502;

McClave v. Paine, 49 N. Y. 561, 10 Am. Rep. 431; Lloyd v. Matthews, 51 N. Y. 124; Chandler v. Sutton, 5 Daly, 112; Wylie v. Marine Nat. Bank, 61 N. Y. 415.

It clearly appears here that causes and information independent of any information furnished by plaintiff led up to and brought about the consummation of the sale by the defendants. Armstrong v. Wann, 29 Minn. 126, 12 N. W. 346; Latshaw v. Moore, 53 Kan. 234, 36 Pac. 343; Studer v. Byson, 92 Minn. 388, 100 N. W. 91; Douville v. Comstock, 110 Mich. 693, 69 N. W. 79; Mechem, Agency, § 966; Kelso v. Woodruff, 88 Mich. 303, 50 N. W. 249; Wylie v. Marine Nat. Bank, 61 N. Y. 415; Sussdorff v. Schmidt, 55 N. Y. 319; Sibbald v. Bethlehem Iron Co. 83 N. Y. 379, 38 Am. Rep. 441; Dreyer v. Rauch, 42 How. Pr. 22; Thuner v. Kanter, 102 Mich. 59, 60 N. W. 299.

If Schuyler was a purchaser, he was not ready, able, and willing to purchase upon the terms submitted to plaintiff by defendants. This is the whole test of liability. Darrow v. Harlow, 21 Wis. 303, 94 Am. Dec. 541; Brown v. Shelton, — Tex. Civ. App. —, 23 S. W. 483; Warren v. Cram, 71 Mo. App. 638; Gleason v. Nelson, 162 Mass. 245, 38 N. E. 497; Murray v. Currie, 7 Car. & P. 584, 2 Eng. Rul. Cas. 527; Wilkinson v. Martin, 8 Car. & P. 5, 2 Eng. Rul. Cas. 529; Hungerford v. Hicks, 39 Conn. 259; Gillespie v. Wilder, 99 Mass. 170; Tombs v. Alexander, 101 Mass. 255, 3 Am. Rep. 349; Earp v. Cummins, 54 Pa. 394, 93 Am. Dec. 718; Lyon v. Mitchell, 36 N. Y. 235, 93 Am. Dec. 502; McClave v. Paine, 49 N. Y. 561, 10 Am. Rep. 431; Lloyd v. Matthews, 51 N. Y. 124; Chandler v. Sutton, 5 Daly, 112; Wylie v. Marine Nat. Bank, 61 N. Y. 415; Armstrong v. Wann, 29 Minn. 126, 12 N. W. 346; Anderson v. Johnson, 16 N. D. 176, 112 N. W. 139; Ball v. Dolan, 18 S. D. 558, 101 N. W. 722.

The plaintiff not only failed to procure a buyer upon the terms of the contract, but the sale was made by defendants through other independent causes, and on wholly different terms. Therefore he is not entitled to recover. Yoder v. White, 75 Mo. App. 155; Ramsey v. West, 31 Mo. App. 676; Zeidler v. Walker, 41 Mo. App. 118; Tooker v. Duckworth, 107 Mo. 231, 80 S. W. 964; Darrow v. Harlow, 21 Wis. 303, 94 Am. Dec. 541; Warren v. Cram, 71 Mo. App. 638; Clark v. Nessler, 50 Ill. App. 550, and cases cited; Davis v. Gassette, 30 Ill. App. 45, and cases cited; Hoadley v. Savings Bank, 44 L.R.A. 348, note; Hay v. Platt, 66

Hun, 488, 44 L.R.A. 348, 21 N. Y. Supp. 362; Weber v. Clark, 24 Minn. 355.

*Fowler & Green,* for respondent.

"The motion at the close of a trial for a directed verdict is in the nature of a demurrer to the evidence, and all fair inferences from the evidence must be drawn in favor of the person against whom such verdict was directed, and where honest, intelligent men may fairly differ in their conclusions from the evidence, it is error to direct a verdict." John Miller Co. v. Klovstad, 14 N. D. 435, 105 N. W. 164; Higgs v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 N. D. 446, 15 L.R.A.(N.S.) 1162, 114 N. W. 722, 15 Ann. Cas. 97; Hall v. Northern P. R. Co. 16 N. D. 60, 11 N. W. 609, 14 Ann. Cas. 960; Lowry v. Piper, 20 N. D. 637, 127 N. W. 1046; Houghton Implement Co. v. Vavrowski, 19 N. D. 594, 125 N. W. 1024.

There is no conclusive effect to be given to a letter written in the course of dealings between a principal and his agent as controlling the oral testimony and other written evidence. McLaughlin v. Wheeler, 1 S. D. 497, 47 N. W. 816; Lowry v. Piper, 20 N. D. 637, 127 N. W. 1046.

There is ample foundation in the record to uphold the instruction of the court to the effect that if, at the time of the sale, the agreement was upon a *quantum-meruit* basis, the plaintiff, if he was the procuring cause, could recover, and the verdict of the jury will be presumed to have been based upon that instruction and theory of the case. Reihus-Remer Land Co. v. Benner, 91 Minn. 401, 98 N. W. 186; Northern Immigration Asso. v. Alger, 27 N. D. 469, 147 N. W. 100, and cases cited; Wykoff v. Kerr, 24 S. D. 241, 123 N. W. 733; Ward v. McQueen, 13 N. D. 153, 100 N. W. 253; Wood v. Wells, 103 Mich. 320, 61 N. W. 503; Henninger v. Burch, 90 Minn. 43, 95 N. W. 578; Hubachek v. Hazzard, 83 Minn. 437, 86 N. W. 426; Hambleton v. Fort, 58 Neb. 282, 78 N. W. 498; Bowe v. Gage, 127 Wis. 245, 115 Am. St. Rep. 1010, 106 N. W. 1074.

There was no exception taken to the charge of the court on "procuring cause," and defendants cannot now complain. The instructions of the court are correct. 23 Cyc. 452; Langford v. Issenhuth, 28 S. D. 451, 134 N. W. 889; Smith v. McGovern, 65 N. Y. 574.

"A real estate broker who procures a purchaser for realty and brings

the parties together is entitled to his commissions, although the sale is consummated by another broker on different terms. Wood v. Wells, 103 Mich. 320, 61 N. W. 503; Hambleton v. Fort, 58 Neb. 282, 78 N. W. 498; Anderson v. Cox, 16 Neb. 10, 20 N. W. 10; Hubachek v. Hazzard, 83 Minn. 437, 86 N. W. 426; Wykoff v. Kerr, 24 S. D. 241, 123 N. W. 733; Boyd v. Watson, 101 Iowa, 214, 70 N. W. 120; Myers v. Moore, 85 Neb. 715, 124 N. W. 157; Elwood-Emerson Land Co. v. Bleasdale, — Iowa, —, 139 N. W. 554; Rounds v. Alee, 116 Iowa, 345, 89 N. W. 1098; Henninger v. Burch, 90 Minn. 43, 95 N. W. 578; Kelso v. Woodruff, 88 Mich. 299, 50 N. W. 249; St. Felix v. Green, 34 Neb. 800, 52 N. W. 821; Humphrey v. Eddy Transp. Co. 115 Mich. 420, 73 N. W. 422.

The charge of the court being "that if you find by a fair preponderance of the evidence that the contract was as plaintiff claims, then a 'procuring cause' means the original discovery of the purchaser by the broker and the starting of negotiations by him, together with the final closing by or on behalf of his client, with the purchaser," no objection or exception to such charge was made by either party. Smith v. McGovern, 65 N. Y. 574; Langford v. Issenhuth, 28 S. D. 451, 134 N. W. 893.

The court's charge must be read and considered as a whole. Stoll v. Davis, 26 N. D. 373, 144 N. W. 443.

BRUCE, J. This is an action to recover 50 cents an acre, which it is claimed is the reasonable value of services rendered in selling 3,456.75 acres of land for and on behalf of the defendants, Holmes and Bakke. The court refused a motion to direct a verdict for the defendants, and the defendants now appeal from a judgment rendered on the verdict of the jury.

The complaint alleges "that the plaintiff was employed by said defendants to aid them in and about their business of selling lands, and to find and bring purchasers for lands owned by said defendants, and which said defendants otherwise had for sale upon a commission which defendants promised to pay this plaintiff," and "that during the time when plaintiff was employed as aforesaid by said defendants, he found and furnished *as customers* for the purchase of land from said defendants one Clarence C. Schuyler and one Alex. Stern, that the defendants,

with the aid and assistance of this plaintiff, sold and procured to be conveyed to said Alex. Stern three thousand four hundred and fifty-six and 75/100 acres (3,456.75 acres.) of land in the counties of Becker, Clearwater, and Mahnomen, in the state of Minnesota; and the transactions concerning said sale were had by plaintiff with said Alex. Stern, through said Clarence C. Schuyler, said Schuyler acting for said Stern," and "that plaintiff's services in and about the making of the sale aforesaid were reasonably worth, and the reasonable commission upon said sale for the services rendered by this plaintiff is, the sum of 50 cents per acre and the aggregate amount of one thousand seven hundred and twenty-eight and 37/100 dollars ($1,728.37)," and "that no part of said commission has been paid by said defendants."

The contention of the plaintiff and respondent is that he was employed by the appellants to procure purchasers for them, and was to be paid a reasonable commission for furnishing such purchasers; that he was to have nothing to do with fixing prices or terms or with closing deals, but was simply to procure purchasers; that he did procure purchasers in the persons of Stern, or Schuyler and Stern, and that appellants closed a deal for the sale of 3,456 acres of land, and that plaintiff was therefore entitled to a reasonable commission, which he alleges to be 50 cents an acre.

Appellants, on the other hand, contend that there was an express contract of agency between the parties whereby the plaintiff was to sell the land at a price which should net to the defendants a certain sum, and that he was to obtain his commission, if at all, from what he got in excess of that price, and further that respondent did not as a matter of fact procure any purchasers at all.

It is clear from the record which is before us that, if the plaintiff is entitled to recover anything at all, it must be upon the *quantum meruit,* and it is first claimed by the appellants that no such action is set forth in the complaint. In this contention, however, counsel is in error.

"Assumpsit on a *quantum meruit,*" says Mr. Phillips in § 97 of his work on Code Pleading, "lies for work done at the request of another. It differs from *indebitatus assumpsit* in this, that instead of alleging a promise to pay a certain sum specified, the plaintiff alleges first the doing of the work, and then a promise to pay as much as he reasonably

deserved, and that for the work he reasonably deserves to have a specified sum." Pomeroy holds that the implied promise need not be pleaded, but may be inferred from the facts stated. This is our holding. Pomeroy, Code Rem. 3d ed. §§ 537 to 541.

The complaint meets the latter's test.

Even if it does not technically do so, it was upon this theory that the case was tried, and any ambiguity must be resolved in favor of the verdict.

But was there any evidence of services rendered by and at the request of the defendants, the compensation for which was not already provided for and covered by some special contract?

We think there was. Special contracts there had been, it is true, in the past, but as we view the evidence the transaction before us was outside of and independent of them. The plaintiff had for some time been acting as the selling agent of the defendants. During this time he had been given various lists of lands, and accompanying these lists were letters stating that his commission was to be deducted from the selling price, a net price to the defendants being provided for. In the particular transaction before us, however, the plaintiff had been unable to effect a sale at the list prices, and of the land alone which had been listed with him. He had been repeatedly urged, however, to use his best endeavors. He had therefore inserted an advertisement in the paper asking for a purchaser for the lands which he controlled, and which were only 2,500 acres. In response to this advertisement a man by the name of Schuyler called upon him and told him that he had several parties in mind who wanted to buy; that he wanted to get hold of some lands, cheap lands; that he had several clients in mind *and would place his time against their* money in the purchase. The plaintiff then gave to Schuyler a description of the lands listed with him, and told Schuyler that he thought Bakke had other lands at a cheaper figure, but wasn't sure. Schuyler then said that he would want more than the plaintiff had in that 2,500 acre tract, wanted more land than that, perhaps 4,000 acres, and asked the plaintiff if he could get a cheaper figure than the list price of $7.50. Plaintiff then answered that he could not give him that, but Bakke might be able to give him a better figure, and that he would phone Bakke. This plaintiff did on the next day or so, and told Bakke that he had a client for the purchase of these lands,

that it looked good to him, and that if Bakke had time he would like him to run up and meet Schuyler. Later and a short time afterwards Bakke came to Fargo, *and plaintiff took him over to see Schuyler,* and Schuyler went over in a general way with Bakke the conversation he had had formerly with plaintiff, and after this conversation Bakke was enthusiastic and said that he thought he had a sale effected through Schuyler. This conversation was in December, 1911. After this meeting plaintiff had several talks with Bakke over the telephone, and on these occasions Bakke kept asking him how this sale to Schuyler was progressing, and plaintiff told him that it was hard to effect a sale on account of the fact that the pieces were so separated, and asked Bakke for a descriptive write-up of each piece of land. Bakke, however, told him he could not do this. On January 17th, 1912, the plaintiff wrote Bakke as follows: "I have been talking with Mr. Schuyler to-day and he wants a price on all the land you have there and would like more than 2,500 acres. Kindly call me up by 'phone to-morrow, or advise me as soon as you can, the best price you can put on the whole tract, and also send me revised lists. He has a fellow who will put in at least $5,000 cash, and is in a position to do business right away. He will be in to-morrow or the next day to see about it. This looks like business." On January 23d, 1912, he again wrote: "I wish you would kindly send me soon as possible a little descriptive write-up on each of the pieces for that first list. The $6 land you can just give me a general description of. Mr. Schuyler asked me for this as his client has made this demand. It sounds like business if we can arouse enough interest by giving him proper details. He does not want to see the land, but wants to know just what he is getting." On February the first he wrote: "I received your favor of January 31st in regard to the $6 land and one trouble with the descriptions, John, is that they are too general. The people we are negotiating with now would like a description of each piece, and it would seem to me that if you could only fix up a deal and number the piece and give a little description, even if it is general about each one, it would have a lot of effect. This Schuyler client is just such a fellow, and he demands such a write-up about each piece." On February 2d, Bakke wrote the plaintiff, Farmer, as follows: "As to writing up a description of every piece of land, that is impossible. It would take a man several weeks to locate all of the pieces and examine them.

35 N. D.—23.

It would cost too much money. If Schuyler wants to pick out a few pieces out of the list, we can show him them." On February 10th, Bakke again wrote Farmer as follows: "I am sending you a map of Becker county and one of the reservation. I am loaning this map to Schuyler. *Please take it over to him.* You and I can afford to sit up nights, if necessary, and figure out a deal whereby we can sell this tract to Schuyler." It would appear, however, that this statement as to sitting up nights was in reference to a list on $6 lands and in case of the sale of which the plaintiff, in a former letter, had agreed to divide the commission, first giving each party a dollar an acre, for on January 31, 1912, Bakke wrote Farmer: "In regard to the list of $6 land that I sent you a description of, I do not mind telling you that the price I have made on this and to the owner is $4 per acre, and if you can find a buyer at $6 an acre it will give us a dollar apiece. The other tracts that we are holding at $7 are away ahead of the $6 land. I hope you can make a deal on a part or all of this. *If you have any prospects of sale, I will be* glad to run up to Fargo and help you close the deal. *Keep after him as hard as you can while he is in the notion.* Please take the map over to him. Have you the complete list of these lands?" On February 13, 1912, Bakke wrote Farmer asking for Schuyler's initials. On February 26th, he wrote Farmer: *"What about the deal for the 4,000 acres with Schuyler?"* On February 27th, he wrote: *"Please see Mr. Schuyler again* and see if there is any prospect of making any deal with him. If not, I have one or two other parties interested and will try and make a deal with them, but I want to give Mr. Schuyler first chance." On February 28, 1912, the plaintiff, Farmer, wrote Bakke: "Your favor of February 27 at hand as to Mr. Schuyler. He says that he has had an answer from his client and he has figured on going down to Detroit and see some of the land, but did not think it advisable to go at this time. He still has the deal on tap and hopes to be able to see some of the pieces so that he can give a satisfactory answer to his client." On March 30, 1912, Bakke wrote Farmer: "What about the land you were going to sell to Schuyler and others?"

On the 11th day of June, 1912, the contract of sale was made by the defendants personally, the plaintiff not being present. The contract was in part as follows: "This agreement made and entered into

this 11th day of June, A. D. 1912, by and between C. D. Holmes and J. E. Bakke of the county of Becker, state of Minnesota, parties of the first part, and Alex. Stern of the city of Fargo, state of North Dakota, party of the second part. . . . Witnesses that the said parties of the first part hereby sell and agree to convey to the said party of the second part 3,500 acres of said above-described lands for the sum of $5 an acre, payable in the manner and upon the terms as hereinafter set forth, . . . and agrees to pay therefor the said sum of $5 per acre."

On the 12th day of June, 1912, the plaintiff, Farmer, wrote Bakke as follows: "I have just been advised that a sale has been made through Mr. Schuyler of Fargo, who is our customer. Our information came through Mr. Stern, and if a sale is effected, of course we will expect a division of the commission. I talked with Mr. Schuyler over the 'phone just now and he states that he secured a different price from you, but in all your letters to me you advised me that it would be well to keep after Mr. Schuyler. We feel that Mr. R. J. Wilson and myself are entitled to some consideration in a case a settlement is effected. Kindly let me hear from you."

On June 18, 1912, Farmer wrote Bakke as follows: "I was up to see Schuyler to-day, while I had this matter in mind, and we went over the whole proposition, and he does not in any way deny to me any particular of the testimony which I placed before you yesterday. He did qualify his statement when I brought it to his attention that he had asked you or Mr. Holmes when down there how the deal affected the Fargo parties, by stating that it may have been a conversation he had with you over the 'phone, but he had always had in mind a consideration for us. He further states that your contention that he was to pay me a commission is entirely at variance with the facts. He bears out my testimony exactly that we never even discussed the matter of a commission. He also confirms my recollection of the first conversation I had with him, which is along the following lines: He knew that the land was listed with me for $7.50 per acre, a 2,458-acre tract, he making the statement that he assumed that the 50 cents was my commission. He further stated that, of course, he had no money, and if a deal was made with the St. Paul parties, would I divide with him the 50 cents, so that the land would be at net $7? I did not reply to that statement. He also asked me if I thought he could get the land cheaper, and then

I told him he had better get on the train and go down and see you, which he did. He further bore out my version of the whole matter by stating he had asked me whether he could get more than 2,500 acres, stating that he would need about 4,000 acres. I then wrote you for the list and you sent me the 5,000-acre bunch, advising me that it cost you $4 and that if 'I sold it for $6, we would make $1 an acre apiece. He further stated that in this last deal he told you he did not think he could handle the $7.50 land and asked you for 3,500 acres at your cheapest possible figure, and you finally made a selling price to him of $5. He stated that you did not think you could complete the 3,500-acre list at first, but finally came through. He finally concludes his whole testimony by stating that he could not possibly deny that I am responsible for the deal. I can hardly yet figure out your contention or that of Mr. Holmes. All I want is a fair shake, and if I get that, I am willing to let by-gones be by-gones. I have gone over these particulars as they have occurred to me and Mr. Schuyler, and I am jotting them down before they become cold."

On the 8th day of July, 1912, Bakke wrote Farmer as follows: *"We have not yet closed up the deal between Schuyler and Stern."* On July 9, 1912, Farmer wrote Bakke: "Your favor of July 8th at hand advising me that the deal between you and Messrs. Schuyler and Stern of Fargo has not been closed."

In addition to these letters the plaintiff testified as follows:

Q. You heard Bakke's testimony that after this first talk that you and he had in July in Detroit, that he talked with you several times at Fargo in which the matter of a net price of lands was discussed?

A. Yes, sir; I heard that testimony.

Q. Did you have some talks with him?

A. We had some conversation, but we never discussed the commission matter at all.

Q. What was this conversation?

A. Bakke told me very plainly that he wanted me to get a purchaser for these lands; he urged me to do and wanted me in every conversation to get a purchaser; they wanted to make a sale of this property.

Q. Say what?

A. He said the land was costing a lot of money to carry and he had

to get rid of it, he and Holmes, and he says: "If you get us a purchaser to deal for these lands and bring him down, then we will show him the land, close the deal, and do what is right by you;" that is just the conversation.

He also testified upon cross-examination as follows:

Q. This is the first time in this case that you made this statement that Bakke ever said to you he would do what is right with you?

A. Yes, sir; it is the first time.

Q. You didn't testify to it in your direct examination?

A. No, sir; it wasn't brought out.

Q. Is there a letter in all your correspondence, either introduced in the evidence or not introduced, wherein such a statement is contained?

A. The Hartman letter; yes, sir.

Q. The Hartman deal didn't go through?

A. No.

Q. That is the only one in which there is any such statement?

A. I can't recall that.

Q. You don't remember any other statement?

A. I know that statement was made several times by Bakke, to me, in several ways.

Q. This is the first time you have told us about it?

A. The first time it was brought up; yes.

Farmer also explained his prior testimony relative to the first list of lands given to him and as to the commission of 50 cents per acre, as follows:

Q. You did testify that at the beginning of the arrangements at Detroit that you were to take the $7 land and your commission would be 50 cents?

A. This all had reference to the $7 land.

Q. You testified with reference to the first conversation you were to sell it at $7 net and get 50 cents?

A. That was the first list submitted.

Q. You did have that arrangement then?

A. Yes, sir.

Q. And attempted to make sales under that?

A. Yes, sir; and made one sale under that.

Q. And get your commission?

A. The land sold to Walter Thompson, for instance, there is a case there, that was a part of the $7 list; but I didn't get everything over and above $7 per acre for that; the land was sold for $20 an acre and they fixed the terms.

Q. You got your 50 cents commission?

A. Yes; but I didn't get everything over and·above $7.

Q. You agreed to take 50 cents commission on that?

A. They fixed the terms themselves.

Q. You got your 50 cents?

A. I asked them if that would be acceptable, and they said yes; they fixed the terms and gave me $50 instead of 50 cents an acre.

Q. They gave you more than they contracted to give you?

A. No more than they contracted; if they gave everything they contracted for they would give everything above $7.

He also testified that shortly after July 8th, 1912, Bakke called at his office, and in the conversation stated that he intended to make him a proposition after the deal was all closed, though this was after a claim had been made for the commission and after a covert threat conveyed by the words, "How would you like a suit?"

We are not called upon on this appeal to pass upon the credibility of the witnesses. That was for the jury. All we are called upon to decide is whether there was sufficient evidence to go to that jury of an implied contract to pay a reasonable commission, which would be the basis of an action on the *quantum meruit*.

The question is simply this: If a landowner sends to an agent various lists of land at a certain net price, and the agent interests a prospective purchaser and such purchaser refuses to pay the list price, and wants more land than that offered, and is referred by the agent to the principal to see if he can make a deal with him, and the principal keeps on dealing with the prospective purchaser, both by himself and through the agent, and urges the agent to continue using his influence with the purchaser, and afterwards the principal meets with the purchaser alone and effects a sale for less than the list price and for more land than was actually listed, but yet contemplated in the transactions between

the principal and the agent, whether such agent can recover on the *quantum meruit* a reasonable commission on such sale for his services performed. We think he can.

We have carefully examined the cases which are cited by the appellant, but are not convinced thereby. In the cases of Byers v. Williams, 175 Mich. 385, 141 N. W. 571; Armstrong v. Wann, 29 Minn. 126, 12 N. W. 345; Latshaw v. Moore, 53 Kan. 234, 36 Pac. 342; Studer v. Byson, 92 Minn. 388, 100 N. W. 90; Douville v. Comstock, 110 Mich. 693, 69 N. W. 81; Tooker v. Duckworth, 107 Mo. App. 231, 80 S. W. 963; Warren v. Cram, 71 Mo. App. 638; Hay v. Platt, 66 Hun, 488, 21 N. Y. Supp. 362; Wylie v. Marine Nat. Bank, 61 N. Y. 415; Thuner v. Kanter, 102 Mich. 59, 60 N. W. 299; Clark v. Nessler, 50 Ill. App. 550; Davis v. Gassette, 30 Ill. App. 414,—not only was the broker clearly not the procuring cause of the sale, but all the actions were brought on express contracts for commissions, and not on the *quantum meruit.*

The case of Darrow v. Harlow, 21 Wis. 302, 94 Am. Dec. 541, is clearly not in point, as it merely involves a transaction in which a commission to sell had been given to an agent which was not exclusive, and where the principal himself sold the property to a third person prior to the sale which was made by the agent. Suit, too, was on the fixed commission contracted for.

The case of Davis v. Gassette, 30 Ill. App. 41, is in favor of plaintiff's contention rather than against it. The court in its opinion saying: "It is in our opinion very clear upon the whole record that appellee did not earn commissions by the performance of his contract. His agency was to sell the property at a specified sum. It would be absurd to say that he could earn his commissions by bringing to his principal a customer with a mere offer to trade for the property. It is true that if Pardridge, when he went to look at the property at appellee's instance, had offered to trade with the appellant, and an exchange was brought about between them by negotiations instituted by the efforts of appellee, he would have a claim for his commissions founded on a basis of justice, *for the parties were brought into communication through his agency, and the principal having the power to negotiate with the purchaser on different terms, his doing so would be a waiver of the terms given to the agent. In such case the endeavor of the agent would be the efficient cause*

*of procuring the transaction.* But the evidence in this record shows no such case. Here, a year before the trade was made, Pardridge had absolutely declined to have anything to do with the property on the terms on which appellee was authorized to offer it, and *no negotiations of any kind between appellant and Pardridge resulted from the meeting brought about by appellee.* At that time trading does not seem to have entered the thoughts of either party. The exchange of properties was brought about a year later by *another broker,* who got the parties together on a proposition to trade appellant's property instead of to sell it."

The facts in the case of Weber v. Clark, 24 Minn. 354, are so limited that we are not sure that the case is in point; anyway the rule announced is so inequitable that we decline to follow it. We presume that the action was brought, however, on the contract rather than on the *quantum meruit,* and that therefore the case is not in point.

The case of Putnam v. How, 39 Minn. 363, 40 N. W. 259, would be in point if it were not for the fact that, after the first visit of the purchaser to the agent and his reference to the principal, the agent did nothing more, and was asked to do nothing more, in the transaction. The agent, in short, was not strictly the procuring cause of the future transaction, nor was the suit brought on the *quantum meruit.*

In the case of Zeimer v. Antisell, 75 Cal. 509, 17 Pac. 642, the authority of the agent was expressly limited to a certain time, and the sale was not made by the principal until after that time and the matter had been taken entirely out of the agent's hands.

In the case of Trickey v. Crowe, 8 Ariz. 176, 71 Pac. 967, the owner, who had given the commission contract, died, and subsequently the administrator of the estate sold to the prospective purchaser for the price previously agreed upon but on different terms. The case is decided largely on the theory that the death of the owner terminated the agency, and that the contract of the administrator was a new contract.

In the case of Kane v. Sherman, 21 N. D. 249, 130 N. W. 222, there appears to have been no sale at all, and this court held that there was no evidence of any agreement to sell or any authorization to the agent to sell.

In the case of De Zavala v. Royaliner, 84 N. Y. Supp. 969, the purchaser brought by the broker failed to agree upon terms, and the sale

was consummated, not through the plaintiff, but through an entirely different broker.

The case of Bunks v. Pierce, 33 Colo. 440, 80 Pac. 1036, is clearly not in point.

In the case of Frenzer v. Lee, 3 Neb. (Unof.) 69, 90 N. W. 914, the broker's authority had been ended. He had nothing to do with the subsequent transaction, and in the subsequent transaction only a portion of the property was sold. The same is true of Dillard v. Field, 168 Mo. App. 206, 153 S. W. 532.

We are satisfied, indeed, that in a case such as that which is before us, and where, if the evidence of the plaintiff is to be believed, there can be no question that the plaintiff, Farmer, was the procuring cause of the sale, that that plaintiff is entitled to the reasonable value of his services in an action on the *quantum meruit*. It is true that the land was not sold at the list prices. It is no doubt the fact that such prices could not be obtained, and that the purchaser wanted other lands in addition to those covered by the lists. It is also the fact, however, that in spite of this the defendants urged the plaintiff to continue his efforts, and himself, during such acting, consummated the sale at a lower figure. The plaintiff in short furnished a buyer or buyers upon terms which, even if not originally contemplated, were satisfactory to his clients, and he is certainly entitled to the reasonable value of his services.

Nor do we believe there is any merit in the contention that different land was sold than that originally spoken of and that a house was traded in as part of the transaction. It is clear, indeed, at any rate from the testimony of the plaintiff, that the obtaining of other lands than those listed was contemplated, and it was partly because more land than the 2,500 acres first listed was desired that the matter was referred to Bakke. After this reference Bakke told the plaintiff to keep at the matter, which in itself was a recognition of his continued agency. As far as the throwing in of the house was concerned, that was the defendants' business, and did not affect the matter any more than would a reduction in price, and where the agreement is (and there is evidence which tends to show this) that the agent shall merely furnish a buyer on terms acceptable to his principal, the terms agreed upon must be deemed acceptable.

There was, indeed, to our minds, evidence to go to the jury on the

question whether the plaintiff was the procuring cause of the transaction which was actually consummated, and the question as a whole was one for the jury, and not for the court, to pass upon. Elwood-Emerson Land Co. v. Bleasdale, — Iowa, —, 139 N. W. 554; Smith v. McGovern, 65 N. Y. 574.

Nor do we believe that there is any merit in the contention that, "if Schuyler was a purchaser, he was not ready, able, and willing to purchase upon the terms submitted to plaintiff by defendants, and that plaintiff never produced any purchaser willing to deal upon the terms fixed by the defendants, and the final sale was entirely different and included other properties and was made upon different terms and conditions from those upon which the plaintiff was to furnish a purchaser." It is perfectly true that not more than 2,500 acres of the land that was originally listed was sold, and possibly only 1,500 acres, and that Schuyler probably never furnished any part of the purchase price. It is clear from the testimony of the plaintiff, however (and the jury could believe this or not as they chose), that Schuyler never pretended to be the actual purchaser, but was merely to furnish his time while the actual purchaser furnished the money. The important thing, indeed, was to find a buyer, and if the plaintiff did this it was immaterial whether an intermediary was used or not. Kelso v. Woodruff, 88 Mich. 299, 50 N. W. 249; St. Felix v. Green, 34 Neb. 800, 52 N. W. 821.

All that the complaint alleges, indeed, is that "the plaintiff found and furnished, as customers, one Clarence C. Schuyler and one Alex. Stern, that defendants with the aid and assistance of this plaintiff sold and procured to be conveyed to said Alex. Stern 3,456 acres of land, that the transactions concerning said sale were had by plaintiff with said Alex. Stern through said Clarence C. Schuyler, said Schuyler acting for said Stern."

This the evidence of plaintiff tended to show, and this was sufficient.

The sale as consummated, it is true, was not such as was originally contemplated by the parties, but that the plaintiff was its procuring cause was settled by the verdict of the jury, and he is therefore, entitled to compensation. 31 Cyc. 1516; Ward v. McQueen, 13 N. D. 153, 100 N. W. 253.

It is urged, however, that the verdict and judgment is upon the theory

of a *quantum meruit,* and is at variance with the proof of the case, which is purely proof of an express contract. We do not, however, so read the record. Even if there was an express contract, however, the evidence, to our minds, tends to show that the parties were brought together by the plaintiff, and that the variance from that contract was brought about by the defendant making his own personal settlement, and it would seem that even upon this theory the jury were justified in rendering the verdict they did, as all of the contracts contemplated at least 50 cents an acre commission, and though this was conditioned upon selling at a fixed price, if the defendant chose to sell it himself for a lesser sum, still, since he used the agency of the plaintiff to keep him and his purchaser together, he would be none the less liable.

It is next urged that the trial court erred in the matter of the admission and exclusion of evidence. One of the facts which would influence us in coming to a conclusion in the case, and that adverse to the interests of the defendants, is, that the plaintiff, Farmer, testified that after the contract for the sale of the property to Alex. Stern he had a conversation with Bakke in which he asked Bakke why he had not considered him in connection with the deal, and that Bakke told him that he did not consider it necessary, as he never had any idea that the deal would be closed, and that he, Bakke, said that he "had a consideration with me (Farmer), and intended to make me a proposition after the deal was all closed." This evidence was competent, not in the theory of a settlement (for none was pleaded), but as an admission on the part of the defendant and as proof of a recognition of the agency of the plaintiff in the bringing about of the deal in question. It is claimed, however, that the examination of the defendant Holmes as to this testimony was unduly limited, and that on such examination the defendant was not permitted to testify as to a later meeting and conversation, the defendants' counsel urging that "Farmer testified that they said we will make you a proposition later and I am trying to find out what that conversation was later, and why it was made."

We are of the opinion, however, that reversible error was not committed in this matter. The court held merely that the examination should be limited to the particular conversation testified to by the plaintiff. This conversation was held prior to the final closing of the deal, while the future conversation was held after it had been closed,

and some three weeks later. No offer of proof was made, and we are unable to see from the record that any prejudice was occasioned. It is now the well-established law in this jurisdiction that "a party must offer to prove the facts sought to be elicited before he can assign error upon an objection sustained to a question to a witness, the competency of which is not apparent on its face." Halley v. Folsom, 1 N. D. 325, 48 N. W. 219; Mordhorst v. Nebraska Teleph. Co. 28 Neb. 610, 44 N. W. 469.

So, too, it would seem from the record that later in the same examination the trial court changed its ruling and the defendant was given the opportunity to introduce all of the testimony that it desired in relation to this later meeting.

It is next urged that the court erred in allowing the witness, Schuyler, to testify concerning his conversation with the purchaser, Stern, as to the interest he and Stern should have in the land sought to be purchased.

It is not necessary for us, however, to determine whether under ordinary circumstances the hearsay rule would be violated by the admission of such testimony. It is sufficient to say that even if the conversations were not admissible and were hearsay and not binding on the defendants, their only effect could have been to show that Schuyler was a joint purchaser with Stern, and, as we have before stated, it is immaterial to a recovery in this case whether Schuyler was a joint purchaser or merely an agent.

The defendants further complain of the charge of the court on the subject of who is and who is not the procuring cause of a sale. The only exception taken was to the court's action on a request for an instruction which was submitted by the plaintiff. This request was marked "refused but given in substance," and no exception seems to have been taken to the charge which was actually given. But even that charge was, to our minds and under the facts of the case, correct.

The court instructed the jury that "the words, procuring cause, have been used in this charge. What they mean as applied to this case is: If you find from a fair preponderance of the evidence *that the contract was as plaintiff claims,* then a procuring cause means the original discovery of the purchaser by the broker and the starting of the negotiations by him together with the final closing by or on behalf of his client

with the purchaser; and in this behalf I call your attention to what I have already said as to how you will determine whether Mr. Stern was or was not a purchaser furnished by plaintiff."

The prior instruction referred to was as follows: "A deep-seated controversy appears upon the question of whether Mr. Stern was produced by Mr. Farmer, the plaintiff in this action. In that behalf I charge you, gentlemen of the jury, that you are to consider all the circumstances, and discover whether the plaintiff was in truth and in fact the procuring cause of the Stern Brothers purchasing the land in question. The testimony revolves around the securing of these gentlemen through Mr. Schuyler. I think it wholly immaterial whether Mr. Schuyler and Mr. Stern were in partnership, or whether they were not, provided you further find that as a continuous transaction between Mr. Farmer and Mr. Schuyler, and as a part of and in compliance with any contract which you shall find existed between the plaintiff and the defendants, plaintiff was the procuring cause, either directly or indirectly through Mr. Schuyler, inducing Stern to make the purchase which it is conceded that they did make. If you should find that the deal with Mr. Stern was not a part of the transaction between Mr. Farmer and Mr. Schuyler, then your verdict would be for the defendants; and as I have before said, the question with reference to this branch of the case must rest wholly upon the other question: Did the acts of Mr. Farmer, as defendants' agent or broker, result, actually and continuously, in the securing Mr. Stern, and thus become the procuring cause in inducing Mr. Stern, to buy the land in question?"

We can find no error in the instruction given. It was approved in the cases of Smith v. McGovern, 65 N. Y. 574, and Langford v. Issenhuth, 28 S. D. 451, 134 N. W. 893, and under the facts of the case is approved in the action which is before us.

We find no error in the remaining instruction complained of, nor in the refusal of those asked by the defendant. We find it unnecessary to discuss these instructions specifically, as the legal questions involved have been already discussed by us.

The judgment of the District Court is affirmed.