WILLIAM N. CARROLL, Appellant, v. THE LITTLE
RIVER DRAINAGE DISTRICT, Respondent.

St. Louis Court of Appeals.   Opinion Filed December 6, 1921.

1. **DRAINS AND DRAINAGE DISTRICTS: Incorporated: Possess
Character of Municipal Corporations: Destroying Fences: Not Liable
in Double Damages.** An incorporated drainage district possesses
the character of a municipal corporation, and is not liable in
double damages under section 4243, Revised Statutes 1919, for
throwing down fences built across a drainage ditch without giv-
ing six months' written notice to the person owning the adjoining
cultivated fields.

2. **FENCES: Unlawfully Building Fence Across Drainage Ditch: Re-
moval: Damages: Not Recoverable.** In view of section 4706, Re-
vised Statutes 1919, relating to drainage ditches, levees, etc., de-
claring it a misdemeanor to build any fence, dam or other works
across a drainage ditch, the owner of land who built a boundary
fence across such ditch cannot recover damages for loss of cattle
caused by the removal of the fence by the drainage district.

Appeal from Cape Girardeau Court of Common Pleas.—
*Hon. John A. Snider,* Judge.

AFFIRMED.

*Ralph E. Bailey* and *Gallivan and Finch* for appel-
lant.

(1)   A drainage district is liable for the negligence
or unwarranted acts of its agents or employees in the
performance of an authorized duty.   Hunt v. Boonville,
65 Mo. 620; Dooley v. The City of Kansas, 82 Mo. 444;
Worley v. Columbia, 88 Mo. 106; Quinn v. Schneider,
118 Mo. App. 39; Ely v. St. Louis, 181 Mo. 723.   (2)   A
drainage district acquiring right-of-way by condemna-
tion takes only an easement in the land condemned and

not the fee, and the owner of the fee has the right to use the right-of-way so condemned for any purpose not inconsistent with the purposes for which the easement has been granted. 14 Cyc. 1208 and 1212; Gamma Alpha Building Assn. v. City of Eugene, 184 Mo. App. 973; Dixon v. Clow, 24 Wend (N. Y.) 188; Campbell v. Kuhlmann, 39 Mo. App. 628; Schroer v. Brooks, 224 S. W. 53; Smith v. Langewald, 140 Mass. 205; Perley v. Chandler, 6 Mass. 454; Adams v. Emerson, 6 Pick. (Mass.) 51; Greenmount Cemetery Co's Appeal (Pa.), 4 Atl. 528; Moffit v. Lytle, 165 Pa. 173; Rive v. Ford (Ky.), 120 S. W. 288; Smith v. Rowland, 243 Pa. 306; Chandler v. Goodridge, 23 Me. 78; Harvey v. Crane, 85 Mich. 316; Pomeroy v. Salt Co., 37 Ohio St. 520; Abney v. Twombly, 39 R. I. 304. (3) It is error to give contradictory or conflicting instructions. Schneer v. Lemp, 17 Mo. 142; State v. Bonden, 31 Mo. 402; Otto v. Bent, 48 Mo. 23; Henschen v. O'Bannon, 56 Mo. 289; Coolidge v. Charter Oak Life Ins. Co., 1 Mo. App. 109; Stevenson v. Hancock, 72 Mo. 612; Manheimer v. Harrington, 20 Mo. App. 297; Legg v. Johnson, 23 Mo. App. 590; Costigan v. Michael Transp. Co., 33 Mo. App. 269; Marinowsky v. City of Hannibal, 35 Mo. App. 70; Spillane v. Missouri Pac. Ry. Co., 111 Mo. 555; Evers v. Shumaker, 57 Mo. App. 454; Jones v. Chicago B. & K. C. Ry. Co., 59 Mo. App. 137; Union Bank v. First Nat. Bank, 64 Mo. App. 253; Hoover v. Mercantile Town Mutual Ins. Co., 93 Mo. App. 111; Edmonston v. Jones, 96 Mo. App. 83; Frank v. Grand Tower & C. Ry. Co., 57 Mo. App. 181; Bluedorn v. Railroad, 108 Mo. 439. (4) Instructions not based on the evidence are erroneous. Ragan v. Kansas City, etc., 144 Mo. 623; Benne v. Miller, 149 Mo. 228, Press, Brick & Machine Co. v. Gratiot, 151 Mo. 501; Smith v. City of Sedalia, 152 Mo. 283. (5) Instructions should be given or rejected upon the case made by the evidence. Theoretical propositions, which suppose a different state of the case from that which is proved, should not be given, for they directly tend to mislead the jury. McKeon v. Railway, 42 Mo. 79;

Home Bank v. Towson, 64 Mo. App. 100; Rutledge v. Swinney, 261 Mo. 128; Gately Outfitting Co. v. Vinson, 182 S. W. 133. (6) An instruction which takes away from the consideration of the jury the principal issue in the case is erroneous. Turner v. Loler, 34 Mo. 461.

*Oliver & Oliver* for respondent.

ALLEN, P. J.—Plaintiff is the owner of a tract of land in Stoddard county, lying within the boundaries of the defendant, the Little River Drainage District, a drainage district incorporated in 1907 by a decree of the circuit court of Butler county under the provisions of an act of the Legislature of 1905 (Laws 1905, p. 180). The right-of-way for one of the ditches of the defendant district, ditch No. 37, was condemned through the southeastern part of plaintiff's land. Little River flows approximately from north to south in this locality; and plaintiff's land lies west thereof. Ditch No. 37 begins on the west side of Little River, at a point a short distance north of the southern boundary of plaintiff's land, and extending in a southwesterly direction, crosses plaintiff's south line, where it intersects a road, extending east and west, upon which plaintiff's land abuts on the south. It appears that the land lying east and south of said ditch, and west of Little River, now belongs to one Marshall. After this ditch had been dug plaintiff fenced his land, which was woodland. On the south of his land this fence, beginning at the southwest corner of the tract, extended due east to ditch No. 37, where it crossed the ditch, immediately north of a bridge on the road mentioned above, and then extended northeast, along the western edge of the right-of-way of the ditch, to a point near Little River, where it recrossed the ditch and extended north along the west side of the river. It appears that this was a "three-wire fence;" and according to the evidence for plaintiff it was in such condition as to turn cattle. But defendant's evidence is that there was a large gap in the fence near the head of ditch No. 37, and other openings therein along Little River.

On or about September 1, 1916, the defendant district was engaged in constructing a dam across ditch

No. 37, at a point near Little River. It appears that plaintiff refused to permit defendant's employees to camp upon his land while engaged in this work, as did likewise Marshall, the owner of the land on the other side of the ditch. Thereupon the engineer in charge of the work for the district established a camp on the road mentioned above, a short distance east of the bridge over said ditch. In order to go from this camp to the location of the dam, defendant's employees crossed the bridge and proceeded along the west or north side of the right-of-way. In so doing it was necessary to pass through plaintiff's said fence which had been constructed across the ditch immediately north of the bridge, and defendant's employees cut the fence at that point. It appears that defendant's engineer gave orders to its employees "to restore this fence every night," and that this was done "most of the time." The evidence for plaintiff, however, is to the effect that on the morning of September 1, 1916, the gap thus made in the fence was left down, and that through the same plaintiff's cattle escaped and some of them became lost in the swamps nearby.

The action is brought under section 4243, Revised Statutes 1919, the pertinent provisions of which are as follows:

"If any person shall voluntarily throw down or open any doors, bars, gates or fences, and leave the same open or down, other than those that lead into his own enclosure, or shall voluntarily throw down, open or remove any partition fence, without giving six months' written notice to the person owning the adjoining fields, if they are cultivated lands, he shall pay to the party injured the sum of five dollars, and double the amount of damages he shall sustain by reason of such doors, bars, gates and fences having been thrown down or opened, with costs."

The damages, including the expense alleged to have been incurred by plaintiff in searching for the cattle that escaped and the alleged value of the cattle ultimately lost, are laid at $681; and judgment is prayed for double

that amount, and for a penalty of $5, under the statute aforesaid. The pleadings need not be specially noticed.

The cause was tried before the court and a jury, resulting in a verdict and judgment for the defendant district, from which plaintiff prosecutes this appeal.

The assignments of error relate to the giving of certain instructions on behalf of the defendant, which, it is said, rendered the instructions conflicting, contradictory and misleading to the jury.

The instructions, indeed, appear to be conflicting in certain respects; but we are met with the broad proposition asserted by defendant, respondent here, that plaintiff made out no case, and that the court below erred in refusing to peremptorily direct a verdict for the defendant. And if this contention be sound, then it matters not what instructions were given at the trial.

It appears to be conceded by appellant that the district, possessing the character of a municipal corporation, is not liable in double damages under the statute, supra, but it is contended that defendant may be held liable for single damages, citing, Hunt v. City of Boonville, 65 Mo. 620.

One reason advanced by respondent why the demurrer, it is said, should have been sustained is that defendant is a municipal corporation, and in doing the work of constructing this dam defendant was acting in a public and governmental capacity, and hence is not liable for the acts of its agents and servants complained of. But, for our purposes, as we view the case, we may assume, without deciding, that in respect to the work in question the defendant was acting in its corporate and proprietary capacity and liable as other corporations for the wrongful acts of its agents and servants, if any, in the premises.

Plaintiff's case proceeds upon the theory that the defendant drainage district acquired only an easement over plaintiff's land, by the condemnation proceedings, plaintiff retaining the right to put the right-of-way to any use not inconsistent with the purposes for which the

easement was thus acquired; that the construction of
the fence across the right-of-way was not inconsistent
with the proper use thereof by defendant in the enjoy-
ment of its easement; and that the cutting and leaving
down of the fence was unnecessary and unwarranted, and
in disregard of plaintiff's rights. On the other hand,
defendant contends that under the condemnation pro-
ceedings defendant acquired the fee simple title to this
right-of-way strip. It was admitted below that in the pro-
ceeding to condemn this right-of-way, the commissioners,
in their report filed in the circuit court of Butler county
on December 30, 1911, assessed the "cash value" of said
right-of-way through plaintiff's land at $60, and that
"said amount was awarded as damages to the owner of
the land and is a credit against the benefits assessed to
the balance of said tract of land." And it is defendant's
contention that under section 5313, Revised Statutes
1909, in force at the time of such condemnation proceed-
ings, the district acquired the full and complete owner-
ship of the land. But we need not enter upon a discus-
sion of this question. If, without passing judgment
thereupon, we give plaintiff the benefit of the assump-
tion that defendant acquired an easement only, we are
convinced that plaintiff cannot recover in this action, for
the reason to be presently noted.

Section 4706, Revised Statutes 1919, found in arti-
cle XI of chapter 28, Revised Statutes 1919, relating to
drainage ditches, levees, etc., provides that "it shall
be unlawful for any person, association or corporation
. . . to build any fence, dam or other works across
any such (drainage) ditch;" and makes the violation of
said section a misdemeanor punishable by fine or impris-
onment or both. Defendant invokes this section, and
says that plaintiff, in building his fence across the ditch,
as he did, violated the same, and is for that reason pre-
cluded from recovering in this action. This contention
we think must be upheld. That plaintiff's act was in
violation of the statute appears to admit of no doubt.
The portion of the fence that was removed stood on the

bank of the ditch, or the "dump," at the place where the fence crossed the ditch near the bridge, and the necessity for defendant's employees to pass through plaintiff's fence arose from the fact that plaintiff thus built his fence across the right-of-way and the ditch. In his testimony plaintiff said: "My fence comes straight across the ditch there. . . . Where the fence came across the ditch it was cut down on top of the dump on the west side of ditch and the fence was cut down for the purpose of coming in and going up on the inside, and there is where the cattle came out."

Under these circumstances we regard it as clear that plaintiff cannot recover. No action will lie against a proprietor for the removal of a fence wrongfully and unlawfully placed upon his property. [See Stillwell v. Duncan, 103 Ky. 59, 39 L. R. A. (N. S.) 863; State v. Headrick, 3 Jones Law (48 N. C.) 375; 26 R. C. L. p. 950, sec. 25; 11 R. C. L., p. 990, sec. 47.] [See, also, Wright v. Brown, 163 Mo. App. 117, 145 S. W. 518.] Furthermore, plaintiff is unable to come into court in this action without disclosing his own violation of the law with respect to the very matter in controversy, which perforce will preclude a recovery by him. [Kitchen v. Greenabaum, 61 Mo. 110; Rothwell v. Gibson, 121 Mo. App. 279, 98 S. W. 801.]

Plaintiff evidently crossed and recrossed the ditch with his fence under the mistaken belief that he had the right so to do. In his testimony plaintiff, referring to the right-of-way, said: "I fenced it up through ignorance." But the fact that plaintiff did not intentionally violate the law can avail him nothing in this action.

It follows that the judgment should be affirmed, and it is so ordered. *Becker* and *Daues, JJ.,* concur.